**UNITED STATES of America**

v.

**Jack P. INSCO and Daniel G. McMullen, Jr.**

**No. 73-104-ORL-CR-Y.**

United States District Court, M. D. Florida, Orlando Division.

Nov. 1, 1973.

Jeffry R. Jontz, Asst. U. S. Atty., Orlando, Fla., for plaintiff.

Benton L. Becker, Cramer, Haber & Becker, Washington, D. C., Chandler R. Muller, Winter Park, Fla., for defendants.

## ORDER

GEORGE C. YOUNG, Chief Judge.

This case is before the Court on the motions of the defendants to dismiss the indictment. In Count One the defendant, Jack P. Insco, is charged with the substantive offense of violating the provisions of § 612 of Title 18, United

States Code which provides in pertinent part:

"Whoever willfully publishes or distributes or causes to be published or distributed . . . any . . . writing or other statement relating to or concerning any person who has publicly declared his intention to seek the office of . . . Representative in . . . Congress, in a . . . general . . . election . . . which does not contain the names of the persons, associations, committees, or corporations responsible for the publication or distribution of the same and the names of the officers of each such association, committee or corporation, shall be fined not more than $1,000.00 or imprisoned not more than one year or both."

In Count Two both defendants are charged with a conspiracy to violate § 612, Title 18, United States Code. Both counts are based on the alleged publishing or distribution of approximately 2,-500 automobile bumper stickers reading "McGOVERN-GUNTER". William Gunter was the Democrat opponent of Republican Jack P. Insco for Representative to Congress in the 1972 general election.

█ Initially the defendants contend that the word "writing" contained in § 612 does not embrace bumper stickers. A very persuasive argument has been advanced as to why bumper stickers are not included within the coverage of that section. However, after fully considering the arguments, both pro and con this Court concludes that the word "writing" is comprehensive enough to include a bumper sticker.

█ Secondly, the defendants contend that even if a bumper sticker is included within the meaning of a writing that such a writing must constitute a "statement" because of the language in the section which reads, "writing or other statement". It is the contention of the defendants that the words "McGovern-Gunter" which are alleged to be the sole words on the offending bumper stickers, did not constitute a "statement" and therefore would not run afoul of the provision of § 612. This Court cannot conclude that the words "McGovern-Gunter" are not a statement so as to require dismissal of the indictment. The Government will have to prove at trial that such words did constitute a statement, and it is possible to conclude that a statement of fact as to Gunter's affiliation with McGovern was advanced by the wording. However, that would be a matter for determination by the trier of the facts.

Thirdly, the defendants contend that prior custom and usage of the application of § 612 has excluded bumper stickers from its coverage so as to render the statute application in this case void for vagueness. This Court requested the Government to advise if any prosecutions or investigations of the publication or distribution of automobile bumper stickers for violation of Title 18, United States Code, § 612 had ever been conducted by the Department of Justice prior to the case at bar. The Government filed on October 24, 1973 its reply, advising that prior to November 16, 1972 the Department had not had occasion to investigate or prosecute a case involving the publication or distribution of automobile bumper stickers in violation of § 612.

To complicate the disposition of this particular issue, defense counsel introduced at the hearing on the motion before the Court, numerous bumper stickers from a number of federal elections which failed to contain the attribution clause required by § 612. In addition, it was represented that both the defendant Insco and his congressional opponent Gunter had bumper stickers in use advertising their respective campaigns which contained no attribution clauses and which have not been the subject of prosecution. It would appear that the Department of Justice has not in the

past and is not now prosecuting for failure to include an attribution clause on a bumper sticker where purportedly the name of the candidate on the bumper sticker is the candidate for whom or on behalf of the bumper stickers were printed and circulated. In the case at bar it appears that the defendants are charged with, in effect, surreptitiously publishing or distributing an opponent's bumper sticker with the intention to have the public believe that the bumper sticker was published or distributed by the opponent.

■ While the added twist to this case gives an overtone of alleged fraud on the public and the opponent, that particular factor is not a required element of the offense prohibited by § 612. Section 612 prohibits a writing (which this Court concludes included bumper stickers) which fails to have the required attribution clause. The statute says nothing about fraud or the necessity for a statement to be misleading.

■ The question then arises, if the Department of Justice has never prosecuted for failure to include an attribution clause on a bumper sticker, can it now use a statute as a vehicle for prosecution because of the additional (but not required for prosecution) element of alleged misrepresentation? This Court concludes that it can do so. The decision as to whether to prosecute or not to prosecute is a matter within the discretion of the officials of the Department of Justice, which discretion must be based upon a number of factors including the evidence available and the likelihood of successful prosecution. It is not unreasonable to conclude that a prosecution against a candidate for failure to have an attribution clause on his own bumper stickers would be unsuccessful, whereas the prosecution against a candidate for failure to put an attribution clause on a bumper sticker published or distributed by him and purportedly published and distributed by his opponent would be successful. This distinction is sufficient to permit the Department of Justice to be selective in its prosecution although the better course would be for Congress to make such distinction. Therefore, this Court concludes that the failure of the Government to bring any prior charges for failure to comply with § 612 as applied to bumper stickers does not preclude the bringing of the indictment in this case.

■ Lastly, the defendants contend that the case of Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) is applicable to this case and precludes the prosecution. In that case an ordinance of Los Angeles was challenged for restricting the distribution of handbills without having printed on the cover an attribution statement. Mr. Justice Black in stating the majority opinion said; p. 64, 80 S.Ct. p. 538:

> "Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind. Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all. The obnoxious press licensing law of England, which was also enforced on the Colonies was due in part to the knowledge that exposure of the names of printers, writers and distributors would lessen the circulation of literature critical of the government. The old seditious libel cases in England show the lengths to which government had to go to find out who was responsible for books that were obnoxious to the rulers. John Lilburne was whipped, pilloried and fined for refusing to answer questions designed to get evidence to convict him or someone else for the secret distribution of books in England. Two Puritan Ministers, John Penry and John Udal, were sentenced to death on charges that they were responsible for writing, printing or publishing books. Before the Revolutionary War colonial patriots frequently had to conceal their authorship or distribution of literature that easily could have brought

**1312**

down on them prosecutions by English-controlled courts. Along about that time the Letters of Junius were written and the identity of their author is unknown to this day. Even the Federalist Papers, written in favor of the adoption of our Constitution, were published under fictitious names. It is plain that anonymity has sometimes been assumed for the most constructive purposes.

We have recently had occasion to hold in two cases that there are times and circumstances when States may not compel members of groups engaged in the dissemination of ideas to be publicly identified. Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480; National Asso. for Advancement of Colored People v. Alabama, 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488. The reason for those holdings was that identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance. This broad Los Angeles ordinance is subject to the same infirmity. We hold that it, like the Griffin, Georgia, ordinance, is void on its face.

The defendants contend that the *Talley* case requires a finding that the statute is void on its face. However, there is a distinction between the Los Angeles ordinance and § 612. The ordinance was a broad one barring distribution of any handbills in any place, under any circumstances, without an attribution statement. Section 612, on the other hand, applies only to statements relating to or concerning a candidate for President, Vice-President of the United States, a Senator or Representative or Resident Commissioner in Congress. That statute is therefore limited in its coverage to requiring fairness in federal elections and does not preclude anonymous criticism of oppressive practices and laws as referred to by the majority in *Talley*; it is therefore,

Ordered that the motion to dismiss be and is hereby denied.