[Crim. No. 26125. Second Dist., Div. Four. Sept. 18, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN PETER McKUNES, Defendant and Appellant.

COUNSEL

Richard J. Curran for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Cynthia Sonns Waldman, James H. Kline and Stephen M. Kaufman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KINGSLEY, Acting P. J.**—Defendant was charged with grand theft, in violation of subdivision 1 of section 487 of the Penal Code. After a trial by the court, trial by jury having been waived, he was found guilty as charged. Proceedings were suspended and he was granted probation on conditions hereinafter discussed. He has appealed; we reverse.

Sometime prior to July 1973, various instruments and aircraft parts were stolen from the salvage sales department of McDonnell-Douglas Corporation. Eventually they were discovered in the possession of a company in Illinois. Investigation traced the items back to a sale by a man named Kushner. Kushner testified that he had purchased the items herein involved from defendant, at the latter's home. At the time of the alleged sale by defendant to Kushner, defendant was employed by McDonnell-Douglas in the salvage department.

During the course of investigation of the theft, an investigator for the District Attorney of Los Angeles County secured, without subpoena or other court order, telephone company records of calls between Kushner's phone and the phone at defendant's home and office.

Originally, Kushner had told investigators that he had found the items in a bin containing various items legitimately purchased by him from the salvage department and he denied knowing defendant other than as a man with whom he had dealt in buying parts from McDonnell-Douglas. Faced with the telephone records and a threat of prosecution for receiving stolen goods, Kushner, after having been promised immunity, told the investigators of his dealings with defendant at his home. He testified to that effect at the trial.

The only evidence tying defendant to the theft of the items was that of Kushner and the telephone records showing communications between the two men.

I

Defendant contends that the action of the investigator (admittedly a state agent) in securing the telephone company records was illegal and that Kushner's statements to the investigator and his trial court testimony were "tainted fruit" of that illegality. He, therefore, argues that both the telephone company records and testimony about them, and Kushner's trial court testimony, should have been suppressed and that the introduction of that evidence was error.

We think it clear that Kushner's testimony was the "fruit" of the receipt of the telephone company records and that, if that receipt was unlawful, that Kushner's testimony should have been excluded. (*People v. Johnson* (1969) 70 Cal.2d 541 [75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 306].) Absent Kushner's testimony and the records, there was no evidence showing defendant's guilt. The items could have been taken by any of some 27 employees in the salvage department, or they could have been stolen by some other person who had gained access (legally or illegally) to that department.

We turn then to the basic question: Is it a violation of a person's constitutional right of privacy for the government to secure records of telephone calls from the telephone company without having secured a subpoena or other court order? We conclude that a violation of the right

of privacy did occur and that the evidence thereby secured, and its fruits, was inadmissible against defendant. It follows that defendant's conviction must be reversed.

Defendant relies on the recent decision of the Supreme Court in *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238 [118 Cal.Rptr. 166, 529 P.2d 590]. In that case, the Supreme Court held that an "informal" request addressed to a bank by the police for a defendant's bank records was an unlawful search and it ordered the evidence thereby secured suppressed. The People seek to distinguish *Burrows* on the following grounds:[1] (a) that the records were those of the telephone company and not of defendant; (b) that a telephone subscriber does not have the same relation to a telephone company as he does to a bank and, therefore does not have a reasonable expectation of privacy as to the telephone company's records; and (c) that the search in *Burrows* was held objectionable because of the breadth of the request made to the bank.

The first contention was squarely raised in *Burrows* and there rejected, the court saying (at p. 245): ". . . the fact that the bank voluntarily acceded to a police officer's request to deliver papers regarding petitioner's account cannot serve to validate the governmental conduct. It is not the right of privacy of the bank but of the petitioner which is at issue, and thus it would be untenable to conclude that the bank, a neutral entity with no significant interest in the matter, may validly consent to an invasion of its depositors' rights."

The third contention is not supported by any record in this case. The only record as to how the telephone records were obtained is a stipulation that the investigator, if called, would testify as follows: "That he is employed as an investigator by the office of the Los Angeles District Attorney who represent the People in this case; that in that connection, he obtained from the Pacific Telephone Company the public utility records of telephone conversations between Nathan Kushner, K-u-s-h-n-e-r, and John P. McKunes, which telephone company records are mentioned in the transcript of the preliminary hearing in this case; that he obtained the aforesaid phone records showing the existence, time and duration of private telephone calls made by Nathan Kushner and the defendant, John P. McKunes; that he obtained those records informally from the aforementioned telephone company without subpoena."

---

[1] The People's additional argument that the conduct should be approved because of the interest of the state and of McDonnell-Douglas in securing a conviction does not deserve answer.

Although the People utilized only calls between Kushner and defendant, and only calls for a described period, we have nothing to tell us how wide a search was made for calls by either party to other persons, or of the length of time that the search covered. We do not know why the investigator was interested in calls to or by defendant before he secured the records. As far as we know, in this case, he may have initiated a broad fishing investigation into all of Kushner's calls and only by chance stumbled on calls leading him to defendant.

We conclude that the second contention is equally untenable. It is true that the relationship between a subscriber and a telephone company does not involve the same fiduciary status as does the relationship between a bank and its depositors. But that is not material. The question is not one of a breach of a fiduciary duty, but of a violation of a reasonable expectation of privacy. ■ As with bank records, a subscriber has a reasonable expectation that records of his calls will be utilized only for the accounting functions of the telephone company in determining his bills. He has no reason to expect that his personal life, as disclosed by the calls he makes and receives, and the day and time of those calls, will be disclosed to outsiders without some prior judicial inquiry into the need for such invasion and its extent. In *Burrows* the court said (at p. 247): "For all practical purposes, the disclosure by individuals or business firms of their financial affairs to a bank is not entirely volitional, since it is impossible to participate in the economic life of contemporary society without maintaining a bank account. In the course of such dealings, a depositor reveals many aspects of his personal affairs, opinions, habits and associations. Indeed, the totality of bank records provides a virtual current biography."

■ ■ ■ ■ It is equally true that, in this age and place, it is virtually impossible for an individual or a business entity to function in the economic sphere without a telephone and that a record of telephone calls also may "provide a virtual current biography."[2]

## II

Defendant contends that Kushner was an accomplice as a matter of law and, thus, that his testimony required corroboration (Pen. Code,

[2]The trial court's comment that the privilege, if any, was that of Kushner and not of defendant was, of course, incorrect. In California, a defendant may rely on the illegal invasion of the right of privacy of another person. (Witkin, Cal. Evidence (2d ed. 1966) § 76, pp. 72-73; *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 161 [98 Cal.Rptr. 649, 491 P.2d 1].)

§ 1111). The contention is not supported by the record. ■ A receiver of stolen goods is an accomplice of the thief if, but only if, the theft was the result of a pre-theft agreement between the thief and the receiver that the thief would steal the goods and the receiver would buy them. If all that appears is that the thief, at the time of the theft, knows the receiver as a potential purchaser of goods, the receiver is not an accomplice. (*People* v. *Lima* (1944) 25 Cal.2d 573, 576 [154 P.2d 698]; *People* v. *Smith* (1972) 26 Cal.App.3d 404, 408 [102 Cal.Rptr. 625]; 1 Witkin, Cal. Crimes (1963) § 426, pp. 394-395.)

We do not know the content of any of the telephone conversations between Kushner and defendant. The trial court was entitled to conclude that the thefts were made by defendant (if he was the thief) with, at most, the knowledge that Kushner would be interested in purchasing items taken, but without any firm agreement that Kushner would so act. On the record before him, and before us, the trial court was entitled to treat the Kushner testimony, if admissible, as not requiring corroboration.[3]

### III

Defendant argues that the penalty herein imposed on him (one year in county jail and a $3,000 fine) constituted cruel and unusual punishment. Since we reverse for the reason above stated, we need not consider either the merits of that contention nor our jurisdiction to consider it on this appeal.

The judgment is reversed.

Dunn, J., and Jefferson, J.,* concurred.

A petition for a rehearing was denied October 7, 1975, and respondent's petition for a hearing by the Supreme Court was denied November 12, 1975.

---

[3]In this case of this nonjury trial, we must assume that the experienced trial judge was aware of, and applied, the distinction outlined in the text.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.