[Civ. No. 22008. Fourth Dist., Div. One. Aug. 28, 1980.]

RICHARD SCHUSTER et al., Plaintiffs and Respondents, v.
THE MUNICIPAL COURT FOR THE IMPERIAL COUNTY
JUDICIAL DISTRICT OF IMPERIAL COUNTY, Defendant and
Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

888

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, J. Richard Haden, Richard D. Garske and Patricia D. Benke, Deputy Attorneys General, for Real Party in Interest and Appellant.

Anthony L. Miller, Richard B. Maness and William P. Yee as Amici Curiae on behalf of Real Party in Interest and Appellant.

Joseph C. Daly, Jr., for Plaintiffs and Respondents.

Margaret C. Crosby, Alan L. Schlosser, Amitai Schwartz and Fred Okrand as Amici Curiae on behalf of Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

OPINION

WEINER, J. The question presented here is whether the provisions of Elections Code section 29410, prohibiting all anonymous

political campaign literature, is constitutional.[1] We decide the statute constitutes on its face an unconstitutionally overbroad restraint of freedom of expression contrary to the First Amendment of the United States Constitution and article I, section 2, of the California Constitution.[2] We affirm the judgment granting a writ of prohibition restraining further criminal proceedings for alleged violations of the statute.

I

A complaint filed in the municipal court charged petitioners Richard Schuster, Robert Simon and Melvin Walter Lewis with violating section 29410. They sought a writ of prohibition in the superior court after their demurrer to the complaint in the municipal court was overruled. Their petition was granted. The People appeal. (Code Civ. Proc., §§ 904.1, 1110.)

II

Section 29410 compels disclosure on the face of any writing "having reference to an election, or any candidate, or to any measure" of the name and address of the individual "responsible for it." In essence, it constitutes a prohibition of all anonymous political campaign literature, exempting only support statements such as "Yes on," "Vote for" or "Support." Even with the enumerated exemptions, the statute prohibits all anonymous literature which sets forth any arguments, information or ideas in support or in opposition to candidates or ballot measures.

---

[1]All references unless specified are to the Elections Code. Section 29410 reads in part as follows: "(a) Every person, other than a public officer in the performance of an official duty, is guilty of a misdemeanor who causes to be reproduced by any mechanical or electrical means including, but not limited to, printing, photocopying, mimeographing, or silkscreening, any circular, pamphlet, letter, poster, bill, or other reproduced matter having reference to an election, to any candidate, or to any measure, or causes such reproduced matter to be posted or distributed, unless there appears on the circular, pamphlet, letter, poster, bill, or other reproduced matter in no less than six-point type not subjected to the halftone process the name and address of the business or residence of a person responsible for it.

"If the responsible person is acting on behalf of a campaign committee which has filed a statement of organization with the Secretary of State under the provisions of the Political Reform Act of 1974, as amended, the name and address to appear on the reproduced matter may be the name and address of the campaign committee."

[2]Article I, section 2, of the California Constitution reads as follows: "SEC. 2. Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

The statute, in attempting to regulate political speech, touches the core of First Amendment protection. ■ The First Amendment exists to protect free discussion of *governmental affairs* (*Mills* v. *Alabama* (1966) 384 U.S. 214, 218 [16 L.Ed.2d 484, 488, 86 S.Ct. 1434, 1437]), for "speech concerning public affairs is more than self-expression; it is the essence of self-government." (*Garrison* v. *Louisiana* (1964) 379 U.S. 64, 74-75 [13 L.Ed.2d 125, 133, 85 S.Ct. 209, 216].) The constitutional safeguard was fashioned "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." (*Roth* v. *United States* (1957) 354 U.S. 476, 484 [1 L.Ed.2d 1498, 1506, 77 S.Ct. 1304, 1308]; *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 269 [11 L.Ed.2d 686, 700, 84 S.Ct. 710, 720, 95 A.L.R.2d 1412]; see *Hardie* v. *Eu* (1976) 18 Cal.3d 371, 376 [134 Cal.Rptr. 201, 556 P.2d 301].)

■ "First Amendment freedoms are not only protected from patent restraints, but also from more subtle forms of governmental interference." (*Huntley* v. *Public Util. Com.* (1968) 69 Cal.2d 67, 72 [69 Cal.Rptr. 605, 442 P.2d 685]; see *Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 852 [143 Cal.Rptr. 695, 574 P.2d 766].) Since disclosure requirements undoubtedly tend to restrict the freedom to distribute and consequently deter free speech, the latter right encompasses the right to remain anonymous. (*Talley* v. *California* (1960) 362 U.S. 60, 64 [4 L.Ed.2d 559, 563, 80 S.Ct. 536, 538]; *Huntley* v. *Public Util. Com., supra*, 69 Cal.2d at p. 73.) Indeed, "[t]he proposition that, under certain circumstances, anonymity is essential to the exercise of constitutional rights is not a novel one. 'Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.' (*N.A.A.C.P.* v. *Alabama* (1958) 357 U.S. 449, 462 [2 L.Ed.2d 1488, 1499-1500, 78 S.Ct. 1163]; *Britt* v. *Superior Court, supra*, 20 Cal.3d at p. 853.)" (*Ghafari* v. *Municipal Court* (1978) 87 Cal.App.3d 255, 260 [150 Cal.Rptr. 813].) Further, "[a]nonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind. Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all." (*Talley* v. *California, supra*, 362 U.S. at p. 64 [4 L.Ed.2d at p. 562].)

The close relationship of free speech to the political process in this state, emphasized by our state Supreme Court in *Robins* v. *Pruneyard*

*Shopping Center* (1979) 23 Cal.3d 899, 907-908 [153 Cal.Rptr. 854, 592 P.2d 341], has recently been confirmed by the United States Supreme Court in *Pruneyard Shopping Center v. Robins* (1980) 447 U.S. 74, 80-81 [64 L.Ed.2d. 741, 100 S.Ct. 2035, 2040-2041]. ■ Article I, section 2, of the California Constitution affords protection more definitive and inclusive than the First Amendment. (*Robins v. Pruneyard Shopping Center, supra*, 23 Cal.3d 899, 908.)

■ The right of free speech whether under the state or federal Constitution is not absolute. (See *Canon v. Justice Court* (1964) 61 Cal.2d 446, 457 [39 Cal.Rptr. 228, 393 P.2d 428].) The exercise of that right must be compatible with the preservation of other essential rights in a free society which enjoy competing interests. (See *Pennekamp v. Florida* (1946) 328 U.S. 331, 352-355 [90 L.Ed. 1295, 1306-1308, 66 S.Ct. 1029, 1040-1042] (conc. opn. of Frankfurter, J.).) Thus, "[w]here a government restricts the speech of a private person, the state action may be sustained only if the government can show the regulation is a precisely drawn means of serving a compelling state interest. [Citations.]" (*Consolidated Edison Co. of New York, Inc. v. Public Service Commission of New York* (1980) 447 U.S. 530, 540 [65 L.Ed.2d 319, 330, 100 S.Ct. 2326]; see also, *People v. Glaze* (1980) 27 Cal.3d 841 [166 Cal.Rptr. 859, 614 P.2d 291].) The state cannot pursue its legitimate purpose "by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." (*Shelton v. Tucker* (1960) 364 U.S. 479, 488 [5 L.Ed.2d 231, 237, 81 S.Ct. 247, 252]; *NAACP v. Alabama* (1964) 377 U.S. 288, 307-308 [12 L.Ed.2d 325, 338, 84 S.Ct. 1302, 1314]; *Britt v. Superior Court, supra*, 20 Cal.3d 844, 856.) We conclude this to be an appropriate case to weigh the magnitude of the state interest against the statute's encroachment upon First Amendment freedom.

### III

The United States Supreme Court has, on numerous occasions, struck down requirements of disclosure where there was either a failure to establish a compelling state interest and/or a failure to establish a relationship between a compelling interest and the announced method of securing it. The court has declared unconstitutional the requirement that names and addresses of sponsors be printed on handbills (*Talley v. California, supra*, 362 U.S. 60), the requirement that organizations dis-

close membership lists (*Gibson* v. *Florida Legislative Com.* (1963) 372 U.S. 539 [9 L.Ed.2d 929, 83 S.Ct. 889]; *Louisiana* v. *N.A.A.C.P.* (1961) 366 U.S. 293 [6 L.Ed.2d 301, 81 S.Ct. 1333]; *Bates* v. *Little Rock* (1960) 361 U.S. 516 [4 L.Ed.2d 480, 80 S.Ct. 412]; *N.A.A.C.P.* v. *Alabama* (1958) 357 U.S. 449 [2 L.Ed.2d 1488, 78 S.Ct. 1163]); and the requirement that individuals disclose organizational membership (*Shelton* v. *Tucker* (1960) 364 U.S. 479 [5 L.Ed.2d 231, 81 S.Ct. 247]).

*Talley* v. *California, supra,* 362 U.S. 60, involved a Los Angeles ordinance banning distribution of handbills which did not state the names of the author and distributor. In holding the ordinance facially unconstitutional the Supreme Court recognized the importance of anonymity for protecting free speech. In spite of this firm grounding of a right to anonymity as an integral part of the guarantee of freedom of speech, freedom of the press and freedom of association under our state and federal Constitutions, section 29410 criminalizes the exercise of this right with respect to any political campaign literature. In California, proponents of unpopular causes and members of controversial organizations must proclaim their individual identities along with their ideas.

The constitutional right to distribute anonymous literature acknowledged in *Talley* should include conduct of persons who wish to publish and distribute literature concerning candidates or issues in an election campaign. To distinguish *Talley* on the grounds that section 29410 applies only during election campaigns is to ignore the salutary influence of free and open debate at a time when it is probably needed the most. (See *Monitor Patriot Co.* v. *Roy* (1971) 401 U.S. 265, 272-273 [28 L.Ed.2d 35, 41, 91 S.Ct. 621, 625-626].) Even the innocent, concerned citizen who wishes to share his knowledge at election time with others in the community will not be able to write an informed letter to the editor of the newspaper involving a candidate for any office, even for the local school board, and request that his name be withheld without fear of exposing himself and the newspaper to criminal liability. As fatigued as we may be with the numbing rhetoric of political campaigns and elections, free discussion during these important times should not be restricted if we are to maintain a free government of free and informed people.

Relying on *Talley,* the Appellate Department of the San Diego Superior Court held former section 12049, prohibiting the distribution of

anonymous election circulars and handbills pertaining to ballot measures, unconstitutional for the court was unable to distinguish between the distribution of handbills generally and those restricted to elections. (*People* v. *Bongiorni* (1962) 205 Cal.App.2d Supp. 856, 857 [23 Cal.Rptr. 565].)

Our Supreme Court has had occasion to explore and comment upon the nuances of *Talley.* The constitutionality of former section 12047 was tested in *Canon* v. *Justice Court, supra,* 61 Cal.2d 446. That section prohibited the printing and distribution of anonymous writings "designed to injure or defeat any candidate for nomination or election to any public office by reflecting upon his personal character or political action,..." Although holding the statute unconstitutional on another ground, the court explained why it was satisfied that the statute overcame "the freedom of speech barricade." (*Id.,* at p. 460.) The court stressed the narrow drafting of the statute which did not prohibit the communication of ideas nor the content of expression. (*Id.,* at p. 451-452.) In *Huntley* v. *Public Util. Com., supra,* 69 Cal.2d 67, the court in expanding on its earlier statements noted that a limited impairment of freedom of speech was constitutionally permissible when it applied only to "(1) election campaigns (2) where the writing attacked a candidate (3) on a personal matter. Section 12047 reached irresponsible defamation of a candidate's personal life, an area not constitutionally protected [citation], and fostered free and truthful elections, an environment necessary to the intelligent exercise of suffrage [citation]." (*Id.,* 69 Cal.2d at p. 75; see also *Britt* v. *Superior Court, supra,* 20 Cal.3d 844; *Ghafari* v. *Municipal Court, supra,* 87 Cal.App.3d 255, 260-262.)

Section 29410 prohibiting anonymity in those areas untouched by the scope of former section 12047, namely laudatory comment, "writings which are chiefly an expression of ideas" and "impersonal criticism of [candidate's] views or official conduct" (*Canon* v. *Justice Court, supra,* 61 Cal.2d at p. 452, fn. 6), is just too broad. Its criminal sanctions apply to any references to any elections, even those of the past; to any references to any candidates regardless of nature, be it derogatory, laudatory or neutral; and to any references to any ballot measures regardless of truth.

## IV

Admittedly, the state has a compelling state interest in the integrity of the electoral process. "It is clear that the integrity of elections,

essential to the very preservation of a free society, is a matter 'in which the State may have a compelling regulatory concern.' [Citation.]" (*Canon* v. *Justice Court, supra*, 61 Cal.2d 446, 452-453.) The Legislature here, in attempting to promote this governmental interest, declared: "(a) That a need exists for adequate identification of the source of campaign appeals directed at the voters in order to assist them in making rational decisions at the polls.

"(b)  That by requiring such identification of campaign literature, the public is better able to evaluate the source of campaign material, may be more adequately informed, and can better distinguish between truth and falsity.

"(c)  That by requiring identification, anonymous attacks, which cannot adequately be responded to in the heat of a campaign, will be discouraged.

"(d)  That by requiring identification, a candidate who believes he has been libeled may more readily seek ·redress in a civil action for damages.

"(e)  That limiting identification requirements to pejorative campaign material is inadequate because subtle attacks on candidates or measures can be framed which appear to be supportive but, in fact, are pejorative.

"(f)  That a distinction needs to be made between campaign materials of small size that usually carry little more than a "Vote for —" message, such as is often the case with buttons, matchbooks, pens, and the like, on the one hand, and campaign materials which carry more complex messages, on the other. In the case of the former, because of their characteristically small size and limited content, it would be an undue burden to require that identification as to source be included." (Stats. 1977, ch. 976, § 1, p. 2948.)

However, these legislative findings cannot sustain the sweeping impact of the regulation on protected speech.

Regarding source disclosure in order to assist the electorate in making rational decisions at the polls, this interest, although laudable, cannot justify in and of itself a blanket prohibition of all anonymous

campaign literature. "Of course, the identity of the source is helpful in evaluating ideas. But 'the best test of truth is the power of the thought to get itself accepted in the competition of the market' (*Abrams v. United States,* 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173 [1919] [Holmes, J.].) Don't underestimate the common man. People are intelligent enough to evaluate the source of an anonymous writing. They can see it is anonymous. They know it is anonymous. They can evaluate its anonymity along with its message, as long as they are permitted, as they must be, to read that message. And then, once they have done so, it is for them to decide what is 'responsible', what is valuable, and what is truth." (*People* v. *Duryea* (1974) 76 Misc.2d 948 [351 N.Y.S.2d 978, 996].)

Further, considering the inevitable deterrent effect upon the exercise of free speech of compulsory disclosure, section 29410 will silence the voices of advocates of not only minority, but novel views, reducing the quantity and diversity of participants and perspectives within an election contest and thus frustrating the compelling state interest of obtaining an informed electorate (*Brown* v. *Superior Court* (1971) 5 Cal.3d 509, 524 [96 Cal.Rptr. 583, 487 P.2d 1224]), while seriously infringing upon its right to receive divergent ideas.

Concerning the governmental interests of assisting the electorate in distinguishing between truth and falsity, facilitating redress for libel, and discouraging through criminal punishment campaign falsity, former section 12047 and the *Talley* and *Canon* decisions have taught us that such state interests can be furthered through more narrowly constructed statutes without the criminalization of anonymously uttering the truth. The failure of section 29410 to distinguish between protected and unprotected speech constitutes its crowning blow of unconstitutionality.

The People rely heavily upon the legislative finding that the limitation of disclosure requirements to pejorative campaign material 'is inadequate due to the often subtle difference between pejorative and nonpejorative political comment. Their reliance is misplaced. *People* v. *Drake* (1979) 97 Cal.App.3d Supp. 32 [159 Cal.Rptr. 161], in holding section 29410 unconstitutionally overbroad, quite properly observed: "The problem is that, although the intent of this legislation is to create an undeceived, well-informed will of the people, it goes too far.

"For example, if one were to put out a typical campaign mailing stating that if Earl Warren were to be elected Governor of California, he

would be one of the great governors in the history of the state, and if this campaign mailer were unsigned, the printer and/or the distributor of the pamphlet would be guilty of a misdemeanor under the provisions of section 29410. The statute is a flat prohibition of the creation or distribution of a class of written material regardless of the innocence of motive, the truth of the written material or the harmlessness of the activity. The mere unsigned reference to an election of a candidate or a measure on a ballot can, without more, be a crime under the terms of this statute. We see no compelling state interest that would justify criminalizing innocent activities along with injurious activities." (*Id.*, at Supp. pp. 35-36.)

## V

Finally, the reliance of the People and the Secretary of State upon case precedent upholding disclosure of campaign contributions and lobbying activities is misplaced. In *Buckley* v. *Valeo* (1976) 424 U.S. 1 [46 L.Ed.2d 659, 96 S.Ct. 612], the United States Supreme Court reviewed the constitutionality of the Federal Election Campaign Act, declaring in pertinent part the constitutionality of the compulsory disclosure requirements regarding campaign contributions and expenditures. The court's conclusion rested upon the determination that the infringement upon the First Amendment freedoms of expression and association due to compulsory disclosure was outweighed by three specific compelling governmental interests furthered by the disclosure requirements. These interests included: (1) providing the electorate with information to aid them in evaluating candidates, (2) deterring "actual corruption and avoid[ing] the appearance of corruption by exposing large contributions and expenditures to the light of publicity," and (3) "gathering the data necessary to detect violations of the contribution limitations" of the act. (*Id.*, at pp. 67-68 [46 L.Ed.2d at p. 715].) All of these interests, however, are neither present nor applicable to the case in controversy. Only the compelling state interest of an informed electorate is pursued by the enactment of section 29410. Contribution disclosure cases such as *Buckley* v. *Valeo, supra, Brown* v. *Superior Court, supra*, 5 Cal.3d 509, and *Socialist Workers etc. Committee* v. *Brown* (1975) 53 Cal.App.3d 879 [125 Cal.Rptr. 915], as well as decisions upholding the Federal Regulation of Lobbying Act (*United States* v. *Harriss* (1954) 347 U.S. 612 [98 L.Ed. 989, 74 S.Ct. 808]), and the Federal Corrupt Practices Act (*Burroughs* v. *United States* (1934) 290 U.S. 534 [78 L.Ed. 484, 54 S.Ct. 287]), all involve the necessity and thus the compelling governmental interest of guarding against the appearance and potential reality

of undue influence and corruption inherent in financial contributions and lobbying activities. Section 29410 was not intended to address these matters. Rather, it is directed at pure speech involving political affairs (*People v. Duryea, supra*, 351 N.Y.S.2d at pp. 992, 997), which unlike the regulations scrutinized in *Buckley* v. *Valeo, supra*, "is not narrowly limited to those situations where the information sought has a substantial connection with the governmental interests sought to be advanced." (*State* v. *Fulton* (La. 1976) 337 So.2d 866, 871.)

## VI

Our decision here is not singular or unique. Courts of other jurisdictions confronted with the identical issue have reached the same conclusion that a legislative prohibition of all anonymous campaign literature is unconstitutionally overbroad. (See *People* v. *Duryea, supra*, 351 N.Y.S.2d 978; *State* v. *North Dakota Ed. Ass'n* (N.D. 1978) 262 N.W.2d 731; *State* v. *Fulton, supra*, 337 So.2d 866; *Commonwealth* v. *Dennis* (1975) 368 Mass. 92 [329 N.E.2d 706].)[3] The holdings of these cases as well as ours should not be startling. We continue as a country of laws and not of persons because of the premise firmly embedded in our state and federal Constitutions that to stifle discussion is to menace the basic structure of our government. Section 29410 is unconstitutional because it encroaches upon this fundamental freedom.

*Disposition*

Judgment affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied September 16, 1980, and the petition of real party in interest for a hearing by the Supreme Court was denied December 10, 1980. Bird, C. J., was of the opinion that the petition should be granted.

The United States Supreme Court denied a petition for writ of certiorari on April 6, 1981.

[3]We find the federal district court decisions of *United States* v. *Scott* (D. N.D 1961) 195 F.Supp. 440 and *United States* v. *Insco* (N.D.Fla. 1973) 365 F.Supp. 1308, reversed on other grounds, (5th Cir. 1974) 496 F.2d 204, upholding the prohibition in 18 United States Code section 612 of anonymous campaign literature pertaining to candidates unpersuasive. Further, unlike section 29410, the federal statute is more narrowly drafted as it applies to only campaign literature concerning candidates and not to ballot measures. Moreover, our decision also rests on article I, section 2, of the California Constitution.