[Crim. No. 22776. Apr. 26, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
ORIS LEE CHAPMAN et al., Defendants and Respondents.

**COUNSEL**

Dennis Kottmeier, District Attorney, Joseph A. Burns and W. Robert Fawke, Deputy District Attorneys, for Plaintiff and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Jay M. Bloom, Deputy Attorneys General, John K. Van de Kamp, District Attorney (Los Angeles), Harry B. Sondheim and Roderick W. Leonard, Deputy District Attorneys, As Amici Curiae on behalf of Plaintiff and Appellant.

Fred L. Heene, Couwenberg & Heene and James Michael Gunn for Defendants and Respondents.

Quin Denvir, State Public Defender, Alice V. Collins, Deputy State Public Defender, Fred Okrand, Robert K. Calhoun, Jr., Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**BIRD, C. J.**—May the police, acting without a search warrant,[1] obtain from a telephone company the name and address of an unlisted telephone sub-

---

[1]The terms "warrant" and "search warrant" as used in this opinion include other forms of "legal process" as that term is defined in *People* v. *Blair* (1979) 25 Cal.3d 640, 651 [129 Cal.Rptr.650] and *Carlson* v. *Superior Court* (1976) 58 Cal.App.3d 13, 21-23 [159 Cal.Rptr.818, 620 P.2d 738].

scriber when they suspect the telephone may be used for an unlawful activity?

## I.

On December 5, 1980, a confidential informant contacted Detective Mauldin of the San Bernardino County Sheriff's Department and claimed she had some information about illegal offtrack betting. The informant, who had been betting heavily for six months and owed her bookie over $9,000, told Mauldin that she placed bets by calling a particular telephone number. She stated that the "phone spot" operator at this number was a woman called "Lucille," but that "Lucille" was a fictitious name and her true name was probably Marge.

Detective Mauldin knew from his experience and from that of his fellow officers that illegal betting operations use "phone spot" operators to take bets from patrons. The "phone spot" operator then relays the bet to a central location and provides the patron with up-to-date racing information.

Detective Mauldin had the informant call "Lucille" and attempt to place a bet on thoroughbred racing at Bay Meadows, a racetrack in Northern California. "Lucille" told the informant that she would not accept any further bets until the informant paid the money she owed to a man named Lee. At the informant's request, "Lucille" checked her records and reported that the exact amount of the debt was $9,739.20.

The informant told Detective Mauldin that she had paid gambling debts of $10,000 over the past three months to someone she knew as "Lee." She gave Detective Mauldin a description which was similar to the physical characteristics of respondent Oris Lee Chapman. She also identified a picture of Chapman from the Pomona Police Department's files. The police knew Chapman as a bookmaker who lived in Pomona.

Acting without a warrant, Detective Mauldin checked with the telephone company serving that area and learned that the number which he had been given was unlisted. He asked for and received the name and address of the subscriber, Margaret McGee. He then swore out an affidavit and obtained a warrant to secure billing information and an activity printout for that number for a six-month period. The affidavit recited respondent McGee's name and address and described the telephone call which the informant had made to that number.

A week later, Detective Mauldin obtained a second warrant, which authorized a search of respondent McGee's house and car. In the affidavit for

this warrant, McGee's name and address, as originally obtained from the telephone company, were recited. (Other information, learned from the return to the first warrant and from a subsequent investigation, was also included.) Pursuant to the second warrant, the police conducted a search of McGee's home and seized evidence of illegal betting activity. Chapman and McGee were arrested and charged with conspiracy to commit bookmaking. (Pen. Code, §§ 182, 337a, subd. 1.[2])

Respondents moved under section 1538.5 to suppress the evidence seized during the search of McGee's home. They contended, inter alia, that Mauldin unlawfully obtained McGee's name and address from the telephone company without a warrant. The trial court granted respondents' motions to suppress and set aside the information. (§ 995.) ▉▉ ▉▉▉ The prosecution appeals from those orders.[3]

## II.

▉ The sole issue presented by this case is whether Detective Mauldin violated a constitutionally protected expectation of privacy by obtaining, without a warrant, the name and address of McGee from the telephone company although the number is unlisted.[4] Respondents contend that article I, section 13 of the California Constitution protects California's residents

---

[2]All statutory references herein are to the Penal Code unless otherwise noted.

[3]The state seeks review by way of appeal under section 1238, subdivisions (a)(1) and (a)(7).

Section 1238, subdivision (a)(7) provides for an appeal by the prosecution from an order of dismissal under section 1385. As there was no order of dismissal under that statute, an appeal pursuant to section 1238, subdivision (a)(7) does not lie.

However, an appeal from the order setting aside the information does lie under section 1238, subdivision (a)(1). Furthermore, the merits of the order suppressing the evidence on which the section 995 order was based may be reached on this appeal.

This court has held that where a trial court grants an accused's section 995 motion following an order granting a motion to suppress, it is preferable for the prosecution to seek review of such rulings by petition for writ of mandate or prohibition. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 724 [195 Cal.Rptr. 503, 669 P.2d 1278].) However, the merits of the suppression ruling may be reviewed on an appeal from the section 995 order alone, where "[t]he [trial] court . . . accepted the facts as found by the magistrate; the entire hearing was dedicated to debating questions of precedent; and the ruling was based exclusively on the court's interpretation of the relevant law." (*Ibid.*)

This case reaches us in the same procedural posture as did *Laiwa*. As in *Laiwa*, the trial court ruled on a purely legal issue and did not resolve any disputed questions of fact. Thus, as *Laiwa* teaches, this court may reach the merits of the suppression order on the prosecution's section 1238, subdivision (a)(1) appeal.

[4]In this case, respondent Chapman vicariously asserts McGee's constitutional right. (*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150 [98 Cal.Rptr. 649, 491 P.2d 1].) As the seizure in this case occurred in 1980, this court need not determine the effect, if any, of the "truth in evidence" provision of Proposition 8 (Cal. Const., art. I, § 28, subd. (d)) on the admissibility of this information into evidence against either respondent. (*People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149].)

from a search or seizure of this information without prior judicial approval.[5] They argue that McGee's action in obtaining an unlisted telephone number demonstrated a reasonable expectation of privacy which was violated by this unreasonable governmental intrusion. (*Burrows* v. *Superior Court, supra,* 13 Cal.3d at pp. 242-243; *People* v. *Krivda* (1971) 5 Cal.3d 357, 364-365 [96 Cal.Rptr. 62, 486 P.2d 1262], judgment vacated and cause remanded (1972) 409 U.S. 33 [34 L.Ed.2d 45, 93 S.Ct. 32], reiterated (1973) 8 Cal.3d 623 [105 Cal.Rptr. 521, 504 P.2d 457]; see *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507].)

■ This court has held that "in determining whether an illegal search has occurred under the provisions of our Constitution, the appropriate test is whether a person has exhibited a reasonable expectation of privacy and, if so, whether that expectation has been violated by unreasonable governmental intrusion." (*Burrows* v. *Superior Court, supra,* 13 Cal.3d at pp. 242-243; accord, *People* v. *Krivda, supra,* 5 Cal.3d at pp. 364-365.)

This case addresses the reasonableness of a privacy interest in information disclosed to third parties. Therefore, it is governed by the principles set forth in *Burrows* v. *Superior Court, supra,* 13 Cal.3d 238, and in *People* v. *Blair, supra,* 25 Cal.3d 640. Those cases recognized an individual's right to privacy as to information which is in the possession of third parties, specifically bank records and telephone call records. The court held that such information could not be disclosed to law enforcement authorities without legal process. (*Burrows* v. *Superior Court, supra,* at p. 245; *People* v. *Blair, supra,* at p. 654.)

*Burrows* analyzed an individual's constitutionally protected privacy interest in bank records, financial statements, and cancelled checks. The fact that these records were kept by the bank rather than by the individual was considered irrelevant. (*Burrows, supra,* at p. 244.) This court recognized that people disclose the information contained in these records to the bank for very limited purposes. The clear expectation is that those limits will be honored. "A bank customer's reasonable expectation is that, absent compulsion by legal process, the matters he reveals to the bank will be utilized by the bank only for internal banking purposes. . . . The disclosure by the

[5]Article I, section 13 provides that: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

No argument is made that the federal Constitution protects unlisted subscriber information from a warrantless seizure. Respondents' argument is based on *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238 [118 Cal.Rptr. 166, 529 P.2d 590], and on *People* v. *Blair, supra,* 25 Cal.3d 640. In each of those cases, the holding was based on the California Constitution.

depositor to the bank is made for the limited purpose of facilitating the conduct of his financial affairs . . . ." (*Id.*, at pp. 243-244.) In so holding, this court rejected the idea that because information is turned over to a bank, it is no longer private. As the court observed, "it seems evident that [the] expectation of privacy is not diminished by the bank's retention of a record of such disclosures." (*Id.*, at p. 244.)

*Burrows* also pointed out that an individual's disclosure of information to a bank is not necessarily voluntary. (*Burrows, supra,* at p. 247.) Disclosure of the information is required in order to maintain a bank account. In this complex society, few people can live or conduct business without a bank account. "For all practical purposes, the disclosure by individuals or business firms of their financial affairs to a bank is not entirely volitional, since it is impossible to participate in the economic life of contemporary society without maintaining a bank account." (*Ibid.*) Under these circumstances, the expectation of privacy in bank records is a reasonable one.

In *People* v. *Blair, supra,* 25 Cal.3d 640, this court applied the principles of *Burrows* to records of telephone calls made by an individual from his hotel room. This court held that under the California Constitution, such records are protected from warrantless disclosure.[6] *Blair* cited with approval *People* v. *McKunes* (1975) 51 Cal.App.3d 487 [124 Cal.Rptr. 126]. (*Id.*, at pp. 653-654.) There, the Court of Appeal held that an individual's right to privacy was violated when telephone company records of his outgoing calls were obtained without a warrant. (*People* v. *McKunes, supra,* at pp. 490-491.) A telephone "subscriber has a reasonable expectation that records of his calls will be utilized only for the accounting functions of the

[6]Federal law does not appear to protect any privacy interest in bank or telephone records. In contrast to this state's case law, the federal courts have accepted the fiction that there is no expectation of privacy in bank records (*United States* v. *Miller* (1976) 425 U.S. 435 [48 L.Ed.2d 71, 96 S.Ct. 1619]) or in outgoing telephone call records (*Smith* v. *Maryland* (1979) 442 U.S. 735 [61 L.Ed.2d 220, 99, S.Ct. 2577]) because the user voluntarily conveys this information to a third party—the bank (*Miller*) or the telephone company (*Smith*). As a result, the individual user assumes the risk that the third party will in turn disclose it to the police upon request. (See *United States* v. *Miller, supra,* 425 U.S. at pp. 442-443 [48 L.Ed.2d at pp. 78-79]; *Smith* v. *Maryland, supra,* 442 U.S. at pp. 743-744 [61 L.Ed.2d at pp. 228-229].)

The idea that the user no longer expects this information to remain private once he has disclosed it to a third party has been rejected by other commentators. "People reveal information about themselves for various, often very limited, purposes. Financial information is conveyed to a bank in order to get a loan processed, not to evaluate—or prosecute—a person in light of the transaction. . . . An HEW report has said, 'There must be a way for an individual to prevent information about him obtained for one purpose from being used or made available for other purposes without his consent.'" (Note, *Pen Registers after Smith v. Maryland* (1980) 15 Harv. C.R.-C.L. L.Rev. 753, 755-756, citing Secretary's Advisory Committee on Automated Personal Data Systems, U.S. Dept. of Health, Ed. & Welf., Records, Computers, and the Rights of Citizens (1973) p. 41.)

telephone company in determining his bills. He has no reason to expect that his personal life, as disclosed by the calls he makes and receives, and the day and time of those calls, will be disclosed to outsiders without some prior judicial inquiry into the need for such invasion and its extent." (*Id.,* at p. 492.)

Furthermore, disclosure of the information to the telephone company is "'not entirely volitional . . . .'" (*People* v. *McKunes, supra,* 51 Cal.App.3d at p. 492.) Doing without a telephone is not a realistic option for most people. "[I]n this age and place, it is virtually impossible for an individual or business entity to function in the economic sphere without a telephone . . . ." (*Ibid.*) Thus, the customer's expectation of privacy in information gathered by the company during the regular course of its business must be honored as a reasonable one. That expectation cannot be deemed to have been abandoned because the customer is required to disclose to the telephone company certain information.

 The holdings in *Burrows* and *Blair* compel one conclusion—that respondent McGee demonstrated a reasonable expectation of privacy in her unlisted name, address, and telephone number. Disclosure of her name and address to the telephone company was not volitional since it was a prerequisite to obtaining a telephone. The disclosure was plainly made for the limited purpose of billing. Moreover, by affirmatively requesting and paying an extra service charge to the telephone company to keep her unlisted information confidential, respondent took specific steps to ensure greater privacy than that afforded other telephone customers. Surely those steps entitle respondent to as great a degree of privacy as this court has extended to the customers in *Burrows* and in *Blair.*

The fact that many customers do not seek to keep their identities or telephone numbers private does not in any way diminish the privacy rights of those who do. Approximately 30 percent of telephone customers request and pay for unlisted service. (See *CAUSE* v. *P.T. & T. Co.* (1981) 5 Cal.P.U.C.2d 745, 748, mod. and rehg. den. (1981) 6 Cal.P.U.C.2d 417.) This fact demonstrates that for a great many people it is the telephone service itself and not the publicity of a directory listing which is the virtual necessity of modern life. Since disclosure of a name and address is compulsory in order to obtain this service, the information collected by the company is entitled to protection from warrantless disclosure.

The state argues that the telephone company did not explicitly promise McGee that her name and address would be withheld from the police. Therefore, it is argued that she failed to demonstrate an actual expectation of privacy when she asked for an unlisted telephone number. This same

argument was raised in *Burrows* and *Blair.* In neither of those cases did the customer receive an explicit promise of privacy. However, the court recognized that in opening bank accounts or conducting business over the telephone, individuals have a right to expect that the police will not be able to obtain detailed information regarding their activities without a prior judicial determination of the need for this information. By the same token, an unlisted telephone number is usually requested in order that a person's name and address will not be revealed to anyone other than the telephone company. The fact that a significant percentage of customers take affirmative steps to keep their names, addresses and telephone numbers confidential demonstrates the importance of this privacy interest to a large portion of the population. Under these circumstances, an expectation of privacy was reasonable.

*Burrows* and *Blair* noted that bank and telephone call records must be protected from warrantless searches because such records may provide law enforcement with a "virtual current biography" of an individual. (*Burrows* v. *Superior Court, supra,* 13 Cal.3d at p. 247; *People* v. *Blair, supra,* 25 Cal.3d at p. 653.) The state argues that the present case is distinguishable because a name and address do not reveal a "virtual current biography." Further, the state argues that since an individual discloses his or her name and address repeatedly to private and governmental organizations, it is unreasonable to expect that this information will remain private.

*People* v. *Elder* (1976) 63 Cal.App.3d 731 [134 Cal.Rptr. 212], 736-738, is cited as authority for this proposition. The *Elder* court found that a telephone customer had no reasonable expectation of privacy in his name and address as the subscriber to an unlisted number. It found that ". . . unlike both *Burrows* and *McKunes,* there was no seizure of the 'current biography' of the affairs of defendant . . . . [¶] Name and address relate to identification rather than disclosure of private, personal affairs." (*Id.,* at p. 737.)

However, it is not the name and address in the abstract which respondent McGee seeks to keep private. Rather, it is her name and address as the subscriber to a private telephone number which she seeks to protect. Where the police already have extensive information about the telephone number in question, disclosure of the subscriber's name and address may well add the missing link to make up a "virtual current biography."[7]

---

[7]It is worth noting that in neither *Blair* nor in *McKunes* did the police seize a "virtual current biography" of toll calls. In each case the police seized only a very limited record of calls. *Blair* involved records of calls made from a hotel room during a four-day period, and *McKunes* involved records of calls from a suspect to a particular number. The protection given to the records in those cases did not rest on a finding that the police had actually obtained a "virtual current biography" of either customer. Instead, the holdings of those cases established that records of toll calls could lead to the discovery of an individual's "virtual current biography" if law enforcement officials were free to obtain them without a warrant.

An analogy to another area of the law is instructive. The law which governs the attorney-client privilege best illustrates the flaw in the court's reasoning in *Elder.* Normally, a client's identity is not protected by the privilege. ■ As this court has recently noted, "[i]t is well established that the attorney-client privilege, designed to protect communications between them, does not ordinarily protect the client's identity." (*Hays* v. *Wood* (1979) 25 Cal.3d 772, 785 [160 Cal.Rptr. 102, 603 P.2d 19]; *Willis* v. *Superior Court* (1980) 112 Cal.App.3d 277, 291 [169 Cal.Rptr. 301]; 8 Wigmore, Evidence (McNaughton rev. ed. 1961) § 2313.)

However, if the government already *has* evidence of the substance of a communication between attorney and client but seeks the identity of the client to link him with some incriminating evidence, the client's identity is protected by the privilege. "Both the California courts and the federal courts recognize . . . that such information may come within the ambit of the privilege when the client's name itself has an independent significance, such that disclosure would uncover client confidences." (*Liew* v. *Breen* (9th Cir. 1981) 640 F.2d 1046, 1049; see also *Hays* v. *Wood, supra,* 25 Cal.3d at p. 785; *Willis* v. *Superior Court, supra,* 112 Cal.App.3d at p. 291; *In re Grand Jury Proceedings (Jones)* (5th Cir. 1975) 517 F.2d 666, 674; *Tillotson* v. *Boughner* (7th Cir. 1965) 350 F.2d 663, 666; *N.L.R.B.* v. *Harvey* (4th Cir. 1965) 349 F.2d 900, 905; *Colton* v. *United States* (2d Cir. 1962) 306 F.2d 633, 637; *Baird* v. *Koerner* (9th Cir. 1960) 279 F.2d 623, 633.)

Therefore, where "disclosure of the client's name might serve to make the client the subject of official investigation or to expose him to criminal or civil liability" (*Hays* v. *Wood, supra,* 25 Cal.3d at p. 785), the name itself may be protected by the privilege.

Here, it is the constitutional right to privacy rather than a privilege that is being invoked. However, the attorney-client privilege cases are analogous in that in both situations the government is seeking the name and address of a person about whom it already has a great deal of information. In many cases, it is seeking the name and address of a person in order to provide an essential link to establish a "virtual current biography." (*Burrows* v. *Superior Court, supra,* 13 Cal.3d at p. 247.) Thus, protection of the individual's name and address is the only way to protect the "virtual current biography."

Cases dealing with the First Amendment also demonstrate the fallacy in the conclusion that there can be no privacy interest in one's name and address. In *Talley* v. *California* (1960) 362 U.S. 60 [4 L.Ed.2d 559, 80 S.Ct. 536], the United States Supreme Court held that a person could not be compelled to identify himself as the author of a political leaflet. The high

court held that "[t]here can be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression." (362 U.S. at p. 64 [4 L.Ed.2d at pp. 562-563]; see also *Bates* v. *Little Rock* (1960) 361 U.S. 516 [4 L.Ed.2d 480, 80 S.Ct. 412]; *N.A.A.C.P.* v. *Alabama* (1958) 357 U.S. 449 [2 L.Ed.2d 1488, 78 S.Ct. 1163]; *Schuster* v. *Municipal Court* (1980) 109 Cal.App.3d 887 [167 Cal.Rptr. 447], cert. den. 450 U.S. 1042 [68 L.Ed.2d 239, 101 S.Ct. 1760]; *Ghafari* v. *Municipal Court* (1978) 87 Cal.App.3d 255 [150 Cal.Rptr. 813, 2 A.L.R. 4th 1230]; Note, *The Constitutional Right to Anonymity: Free Speech, Disclosure and the Devil* (1961) 70 Yale L.J. 1084.) Similarly, this court recognized a right not to disclose to the public one's name and address as the author of a political telephone message which is read to anyone who dials a particular telephone number. (*Huntley* v. *Public Util. Com.* (1968) 69 Cal.2d 67 [69 Cal.Rptr. 605, 442 P.2d 685].)

No claim is made here that McGee and Chapman were engaged in constitutionally protected speech. ■ However, the point is that one's name and address as the subscriber to an unlisted telephone is information which one *may* legitimately seek to keep private. "It is plain that anonymity has sometimes been assumed for the most constructive purposes." (*Talley* v. *California, supra,* 362 U.S. at p. 65 [4 L.Ed.2d at p. 563].) Where the police seek to overcome this anonymity in the belief that criminal activity is afoot, they must first obtain a judicial determination that they are entitled to do so. (See *People* v. *Blair, supra,* 25 Cal.3d at p. 651; *Carlson* v. *Superior Court, supra,* 58 Cal.App.3d 13, at pp. 21, 23).[8]

### III.

■ The state contends that *CAUSE* v. *P.T. & T. Co., supra,* 5 Cal.P.U.C.2d 745 compels this court to hold that there is no reasonable expectation of privacy in unlisted telephone subscriber information. That decision directed telephone companies to release the name, address, and/or the telephone number of an unlisted subscriber to a number of agencies, including local police departments. The decision also directed telephone companies to notify all existing and new subscribers of this policy.

■ ■ ■ The state does not contend that the Public Utilities Commission's (Commission's) decision is binding on this court.[9] ■ Rather,

---

[8]To the extent it is inconsistent with today's holding, *People* v. *Elder, supra,* 63 Cal.App.3d 731 is disapproved.

[9]The Legislature may not confer upon the Commission the judicial power to determine the constitutional rights of California citizens. "It is well settled that the Legislature may ratify only what it could have theretofore authorized . . . . Assuming the plenary power of the Legislature to enact laws respecting the regulation and control of public utilities notwithstanding any provision of the Constitution to the contrary, ([former] Art. 12, § 22, Constitution) nevertheless such legislation must appear on its face to be cognate and germane

it is asserted that the decision should be given judicial deference or be viewed as a form of expert opinion as to whether an expectation of privacy was "reasonable."

However, the Commission is *not* a duly constituted "expert" body on constitutional law. On the contrary, the text of the Commission's decisions make it clear that that agency defers to the courts for guidance on constitutional questions. The decision to allow telephone companies to release private information was motivated by what the Commission understood to be the holding in *People* v. *Elder, supra,* 63 Cal.App.3d 731.[10]

■ Next, the state argues that respondents had no actual or reasonable expectation of privacy because the telephone companies, pursuant to the Commission order, mailed notices to all their subscribers informing them that unpublished information would be released to law enforcement agencies. Under these circumstances, it is contended that no subscriber could be deemed to have "exhibited an actual (subjective) expectation of privacy . . . ." (*Katz* v. *United States, supra,* 389 U.S. at p. 361 [19 L.Ed.2d at p. 588] (conc. opn. of Harlan, J.).)

This argument has no force when applied to respondent McGee. Notices were sent out *after* the police obtained the unlisted information in this case.[11] Moreover, before the notices were sent out, 11 telephone companies

---

to the regulation of public utilities to come within the Legislature's plenary power. [Citation]." (*Ivanhoe Irr. Dist.* v. *All Parties* (1957) 47 Cal.2d 597, 644 [306 P.2d 824], revd. on other grounds 357 U.S. 275 [2 L.Ed.2d 1313, 78 S.Ct. 1174], rehg. den. 358 U.S. 805 [3 L.Ed.2d 94, 79 S.Ct. 10].) In fact, the Legislature has explicitly withheld this power from the Commission. (Pub. Util. Code, § 1760.)

[10]Paraphrasing *Elder,* the Commission held that "[n]ame, address, and telephone number are matters of identity, do not give rise to an expectation of privacy, and are not entitled to the constitutional expectation of privacy. We think that the *Elder* case is controlling on this point and we will deny complainants' request to find that Pacific's release of nonpublished information violated the subscriber's constitutional right to privacy." (*CAUSE* v. *P.T. & T. Co., supra,* 5 Cal.P.U.C.2d at pp. 759-760.) Since *Elder* has now been disapproved, the Commission's decision is no longer based on controlling authority.

By the same token, the Commission refused to allow the telephone companies to disclose without legal process records of toll calls and credit information on the ground that such disclosure was prohibited by *People* v. *Blair, supra,* 25 Cal.3d 640. (*CAUSE* v. *P.T. & T. Co., supra,* 5 Cal.P.U.C.2d at pp. 762-764.)

[11]The original decision in *CAUSE* v. *P.T. & T. Co.* (1978) 83 Cal.P.U.C. 559, 576-577, directed the telephone companies to notify their customers that unlisted information would be made available to the police upon request. However, this decision was rescinded, and superseded by *CAUSE* v. *P.T. & T. Co., supra,* 5 Cal.P.U.C.2d 745. Apparently, the telephone companies took no action pursuant to the 1978 decision. The exhibits which the state has provided indicate that customers in respondents' service area were not notified of the release policy until December 1981, a year after Detective Mauldin obtained McGee's address from the telephone company.

in California refused to release unpublished information unless ordered by a court or magistrate. As the Commission noted in its decision, the expectation of privacy on the part of customers of these companies was certainly "well-founded." (5 Cal.P.U.C.2d at p. 759.) As to customers of other companies, the Commission found that at the very least there were "misconceptions" about the *Elder* rule that unpublished information could be turned over to the police. (*Id.*, at p. 761.) Thus, the state's own line of reasoning leads to the conclusion that McGee may well have had an actual expectation of privacy in the unlisted information given to the telephone company.

Even if the notices had been sent out before the seizure of McGee's name and address, there is a more fundamental reason why that fact would not change the result here. Since respondents' privacy claim is a reasonable one, it cannot be wiped out " 'by the simple and expedient device of its universal violation.' " (*DeLancie* v. *Superior Court* (1982) 31 Cal.3d 865, 876 [183 Cal.Rptr. 866, 647 P.2d 142], quoting *People* v. *Hyde* (1974) 12 Cal.3d 158, 164, fn. 4 [115 Cal.Rptr. 358, 524 P.2d 830].) Whatever role the subjective expectation of privacy may play in determining the extent of a constitutional right, ". . . the state cannot curtail a person's right to privacy by announcing and carrying out a system of surveillance which diminishes that person's expectations." (See *Delancie* v. *Superior Court, supra,* 31 Cal.3d at p. 875, fn. 11.)

█ Respondent McGee had a reasonable expectation of privacy in the unlisted information which the telephone company disclosed to the police. This right was protected under article I, section 13 of the California Constitution. It follows that the action of the police, in seizing unlisted information without a warrant, consent or exigent circumstances, violated the Constitution. As in *Burrows,* the search was unreasonable because ". . . the character, scope, and relevancy of the material obtained were determined entirely by the exercise of the unbridled discretion of the police." (*Burrows* v. *Superior Court, supra,* 13 Cal.3d at p. 243.)

## IV.

█ "A search warrant obtained upon information acquired by an illegal search is itself invalid." (*Raymond* v. *Superior Court* (1971) 19 Cal.App.3d 321, 326 [96 Cal.Rptr. 678], citing *People* v. *Roberts* (1956) 47 Cal.2d 374, 377 [303 P.2d 721]; see also *People* v. *Carswell* (1959) 51 Cal.2d 602, 607 [335 P.2d 99]; *Lohman* v. *Superior Court* (1977) 69 Cal.App.3d 894, 898-899 [138 Cal.Rptr. 403]; *Burke* v. *Superior Court* (1974) 39 Cal.App.3d 28, 31 [113 Cal.Rptr. 801].) The burden is on the prosecution

to show that the warrant was not "come at by exploitation of [the initial] illegality . . . ." (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407]; *Raymond* v. *Superior Court, supra,* 19 Cal.App.3d at pp. 326-327.)

■ Following the unlawful seizure, Detective Mauldin used McGee's name and address to obtain a warrant to search her home and car. Nothing in the affidavit for the warrant indicates that the police learned McGee's name and address other than as a direct result of the unlawful seizure. The prosecution failed to introduce any evidence at the suppression hearing to show that there was an independent source for this information. Without the fruits of this unlawful seizure, the police had no information as to where to search for physical evidence of bookmaking activity. The trial court correctly ordered all the physical evidence obtained via this tainted warrant to be suppressed.

■ The entire case against McGee at the preliminary hearing was based on (1) the seizure of her name and address from the telephone company, and (2) the subsequent search of her home. Absent this evidence, there was nothing to tie her to the bookmaking activities which the informant reported to the police. At the preliminary hearing, the informant testified about the "phone spot" operator with whom she placed her bets. She described the telephone conversation which Detective Mauldin had overheard in which the operator told the informant the amount of her debt and arranged for it to be paid off to Chapman. However, the informant could not identify McGee as this operator. Apparently the informant never learned anything about the identity of the operator except her fictitious name, "Lucille," and her probable correct name, Marge. The identity of the operator came to light only through Detective Mauldin's illegal seizure. It was never corroborated from any independent source.

Absent the fruits of the illegal seizure, there was no evidence that McGee was engaged in unlawful activity. The trial court properly granted the section 995 motion as to her.[12]

■ However, the trial court's order granting the section 995 motion as to McGee did not necessarily require that the motion be granted as to Chap-

---

[12]The fact that no witness was able at any time to identify McGee as the "phone spot" operator independent of the illegal seizure distinguishes this case from *People* v. *Teresinski* (1982) 30 Cal.3d 822 [180 Cal.Rptr. 617, 640 P.2d 753]. In *Teresinski,* this court held that even when the identity of the perpetrator of a crime is initially discovered through an illegal search or seizure, a subsequent identification of that person as the perpetrator should not be excluded from evidence if that identification was independent of the illegal search. Here, there was no identification of McGee other than that made by Detective Mauldin as a result of his seizure of the telephone company records.

man, her alleged coconspirator. The court's ruling on this motion was not an acquittal. (§ 999; *People* v. *Reeves* (1967) 250 Cal.App.2d 490, 492-493 [58 Cal.Rptr. 517].) Thus, the rule that acquittal of all but one coconspirator requires acquittal of the remaining conspirator has no application here. (*People* v. *Holzer* (1972) 25 Cal.App.3d 456, 459-460 [102 Cal.Rptr. 11]; *People* v. *James* (1961) 189 Cal.App.2d 14, 16 [10 Cal.Rptr. 809, 91 A.L.R.2d 697].) Even if McGee's identity had never been discovered, Chapman could have been charged with conspiring with persons unknown. (See *People* v. *Taylor* (1974) 12 Cal.3d 686, 695, fn. 11 [117 Cal.Rptr. 70, 527 P.2d 622]; *People* v. *Roy* (1967) 251 Cal.App.2d 459, 463 [59 Cal.Rptr. 636].) The trial court's order setting aside the information as to McGee was not in itself a bar to the prosecution of Chapman, if sufficient evidence, other than that tainted by the illegal search, was introduced.

At the preliminary hearing, the informant testified that she paid her gambling debts to Chapman. A meeting for this purpose was arranged with Chapman through the "phone spot" operator. She attended the meeting at a restaurant which was under surveillance by the San Bernardino Sheriff's Department. At the meeting, she paid Chapman with marked bills. The police observed this payoff and thereafter arrested Chapman. An envelope containing the marked bills was found on his person, and a search of his car revealed the betting records.

This evidence was plainly sufficient to hold Chapman to answer on the charge of conspiracy to commit bookmaking. Therefore, the trial court erred in granting the section 995 motion as to him.

The superior court's order suppressing all physical evidence obtained via the tainted warrant is affirmed. The order granting respondents' motion to set aside the information is affirmed as to McGee, but is reversed as to Chapman.

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., Grodin, J., and Ballachey, J.,* concurred.

Appellant's petition for a rehearing was denied June 21, 1984, and the opinion was modified to read as printed above. Lucas, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.