Opinion
 

 DOSSEE, J.
 

 In this proceeding, plaintiffs challenge the constitutionality of Welfare and Institutions Code section 14016.5, which provides that MediCal beneficiaries will be assigned to and enrolled in a managed care plan
 
 *1762
 
 unless the Medi-Cal beneficiary timely elects to obtain services from a fee-for-service provider and certifies that he or she has an established relationship with a Medi-Cal provider. Plaintiffs contend that this “default” provision forces certain Medi-Cal recipients to be involuntarily enrolled in a managed care plan and denies them their right to choose their own health care provider.
 

 Background
 

 The Statute
 

 The California Medi-Cal program funds health care services for recipients of public assistance and for other medically indigent persons. (§ 14000 et seq.)
 
 [1]
 
 The program provides two health care options: (1) a fee-for-service plan and (2) a prepaid managed health care plan. (§ 14016.5, subd. (b).) The Legislature has declared its intent to encourage enrollment in managed care plans to improve the quality and efficiency of delivery of health care services and to cut costs. (§§ 14000, subds. (a) & (c), 14201 .)
 
 [2]
 

 Medi-Cal applicants are required to attend a presentation at which the two options are explained. (§ 14016.5, subd. (a).) They then have 30 days to select their option in writing. (§ 14016.5, subd. (b).) Current beneficiaries must also attend the presentation and make a selection each time their eligibility is reviewed. (§ 14016.5, subd. (a).)
 

 A Medi-Cal beneficiary who selects the fee-for-service plan receives a monthly Medi-Cal card, which may be used to obtain services from those individual health care providers who have agreed to provide services to Medi-Cal beneficiaries. (§ 14016.5, subd. (b)(1).) The Medi-Cal beneficiary who selects this option may be required to certify that he or she “has an established patient-provider relationship,” but no acknowledgement or acceptance by a provider is required. (§ 14016.5, subd. (b)(1).)
 

 If a Medi-Cal beneficiary does not make a choice or does not certify an established relationship with a primary care provider, then he or she may be assigned to and enrolled in an appropriate Medi-Cal managed care plan. (§ 14016.5, subd. (c)(1).) Alternatively, at the option of the department, the person may be provided with a monthly Medi-Cal card. (§ 14016.5, subd. (f)0
 

 
 *1763
 

 The Lawsuit
 

 Plaintiffs filed a petition for writ of mandamus seeking to restrain implementation of section 14016.5 as an illegal expenditure of public funds.
 
 [3]
 
 Although the petition alleged six causes of action, only the third cause of action is relevant to this appeal: plaintiffs alleged that section 14016.5 violates the due process clauses of the federal and state Constitutions and violates the right of privacy guaranteed by the state Constitution.
 
 [4]
 

 The trial court denied the petition, concluding that section 14016.5 is not unconstitutional. The court reasoned that “[t]he asserted right of an individual to choose between receiving medical care under a fee-for-service as opposed to a managed care program, if it exists at all, does not rise to the level of a fundamental right.” The court then concluded that whatever rights are implicated by the statute do not invoke the compelling interest test and plaintiff had conceded that the statute satisfied the rational basis test.
 
 [5]
 
 Judgment was entered accordingly. Plaintiffs appeal.
 

 Discussion
 

 Introduction
 

 Plaintiffs rely on the principle that although the state has no obligation to provide health care to the poor, once the state has undertaken to make such benefits available it cannot make those benefits dependent upon conditions that deprive the recipients of their constitutional rights.
 
 (Committee to Defend Reproductive Rights
 
 v.
 
 Myers
 
 (1981) 29 Cal.3d 252, 262-270 [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R.4th 1118], and cases cited.) Plaintiffs’ first contention, then, is that Medi-Cal beneficiaries have a fundamental right, subsumed within the constitutional guarantees of privacy or of liberty, to choose their own health care provider. From this premise, plaintiffs argue that the state has infringed upon that constitutional right by forcing Medi-Cal beneficiaries into managed care plans, and plaintiffs contend that the state cannot justify this infringement.
 

 
 *1764
 
 The bulk of the briefing in this appeal is devoted to the latter point—i.e., whether the default provision of section 14016.5 is justified. Plaintiffs maintain that the trial court erred in applying the rational basis test; that this issue requires a three-step analysis, namely, (1) whether the default provision relates to the purposes of the Medi-Cal program, (2) whether the utility of a restriction on the choice of health care provider outweighs the impairment of the constitutional right, and (3) whether there are less offensive alternatives to achieve the state’s objectives. (See generally,
 
 Committee to Defend Reproductive Rights
 
 v.
 
 Myers, supra,
 
 29 Cal.3d at pp. 270-283 [budget limits on Medi-Cal funding for abortions held unjustified and unconstitutional].)
 

 The present case, however, is markedly different from
 
 Committee to Defend Reproductive Rights
 
 v.
 
 Myers, supra,
 
 the case upon which plaintiffs rely. In that case the Attorney General conceded the existence of a constitutional right to choose whether or not to bear a child (29 Cal.3d at pp. 262-263), and there was no question that the restrictions on Medi-Cal funding for abortions infringed upon that right. In contrast, the Attorney General here disputes plaintiffs’ premise that there is a constitutionally protected right to choose one’s health care provider. We find it unnecessary, however, to decide that thorny issue. Instead we conclude that even if such a right exists plaintiffs have failed to establish that it was seriously infringed by the default provision of section 14016.5.
 

 Plaintiffs primarily rely upon the state constitutional right of privacy, (Cal. Const., art. I, § 1), a right recently analyzed by our Supreme Court in
 
 Hill
 
 v.
 
 National Collegiate Athletic Assn.
 
 (1994) 7 Cal.4th 1 [26 Cal.Rptr.2d 834, 865 P.2d 633].
 
 [6]
 
 There the court held that a plaintiff alleging a violation of the state constitutional right of privacy must establish each of the following elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) conduct by the defendant constituting a serious invasion of privacy. The defendant may then prove as an affirmative defense that the invasion of privacy is justified by countervailing interests. (7 Cal .4th at pp. 39-40.)
 

 In the present case, even if we were to assume the existence of the first element, a legally protected privacy interest in choosing one’s health care
 
 *1765
 
 provider, plaintiffs have failed to establish the third element, a serious invasion of that interest. “Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.”
 
 {Hill
 
 v.
 
 National Collegiate Athletic Assn., supra,
 
 7 Cal.4th at p. 37.) Whether a defendant’s conduct constitutes a serious invasion of privacy is a mixed question of law and fact, and when, as here, the material facts are undisputed, the question is a matter of law for the court.
 
 {Id.
 
 at p. 40.)
 

 The freedom of Medi-Cal beneficiaries to choose a health care provider is statutorily limited at the outset to those providers agreeing to provide services to Medi-Cal recipients. (§ 14016.5, subd. (b).) Plaintiffs do not challenge the validity of this restriction on the access to health care providers; rather, plaintiffs contend that Medi-Cal beneficiaries should be free to choose from among the participating Medi-Cal providers through a fee-for-service plan. Yet, section 14016.5 does not curtail that freedom. The statute gives Medi-Cal applicants and beneficiaries 30 days following the presentation of the options in which to select their health care option. Within that same 30-day period the Medi-Cal beneficiary who prefers the fee-for-service plan has the opportunity to look for a Medi-Cal provider and “establish” a relationship. The fact that Medi-Cal beneficiaries are given a finite time period in which to act before the default provision takes effect simply does not rise to the level of an egregious breach of the asserted privacy interest in choosing one’s own health care provider.
 

 In the absence of an infringement upon a constitutional right, the statute will be upheld if it meets the rational basis test
 
 {People
 
 v.
 
 Privitera
 
 (1979) 23 Cal.3d 697, 702 [153 Cal.Rptr. 431, 591 P.2d 919, 5 A.L.R.4th 178], cert, den. 444 U.S. 949 [62 L.Ed.2d 318,100 S.Ct. 419]), and plaintiffs conceded below that it does. We therefore affirm the decision of the trial court.
 

 The judgment is affirmed.
 

 Newsom, Acting P. J., and Stein, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied January 25, 1995.
 

 [1]
 

 All statutory references are to the Welfare and Institutions Code.
 

 [2]
 

 Unlike the fee-for-service plan, a managed care plan does not pay for services actually rendered; instead, the state pays a fixed rate per person per month to the health plan. This payment is made whether or not services are rendered and is accepted as payment in full for all covered services performed.
 

 [3]
 

 Plaintiffs sue in their capacities as citizens and taxpayers. Jerome Lackner is a physician who furnishes medical services to Medi-Cal beneficiaries. Frederick S. Mayer is a pharmacist, and Pharmacists Planning Service, Inc., is an organization of pharmacists who serve Medi-Cal recipients. Renee Pecot and Dawn Taylor are AFDC (Aid to Families with Dependent Children) recipients and Medi-Cal beneficiaries. Women’s Economic Agenda Project is an organization of Medi-Cal recipients seeking to advance the rights of low-income women. Also named as a plaintiff is the West Contra Costa Gray Panthers.
 

 [4]
 

 Tbe department asserted that the issue was not ripe for decision as the department was not yet implementing the default provision. The trial court decided to rule on the facial validity of the statute.
 

 [5]
 

 The trial court further concluded that the remaining five causes of action were not ripe for adjudication. Plaintiffs do not challenge this aspect of the trial court’s decision.
 

 [6]
 

 Plaintiffs also rely upon the right of every competent adult to exercise control over his or her own body—a right based upon common law traditions
 
 (Thor
 
 v.
 
 Superior Court
 
 (1993) 5 Cal.4th 725, 731, 734-735 [21 Cal.Rptr.2d 357, 855 P.2d 375] [right to decline medical treatment]) and perhaps protected by the due process clause (see
 
 Cruzan
 
 v.
 
 Director, Missouri Dept. of Health
 
 (1990) 497 U.S. 261, 278-279 [111 L.Ed.2d 224, 241-242, 110 S.Ct. 2841] [right to refuse life-sustaining hydration and nutrition]). We can see nothing in either
 
 Cruzan
 
 or
 
 Thor
 
 to suggest a right to select one’s own health care provider. Medi-Cal beneficiaries are in no way being forced to accept unwanted treatment or care. They remain free to make voluntary and informed medical decisions and to exercise control over their bodies.