[No. B231137. Second Dist., Div. Five. Mar. 6, 2012.]

MICHAEL WILLARD et al., Plaintiffs and Appellants, v.
AT&T COMMUNICATIONS OF CALIFORNIA, INC., et al., Defendants
and Respondents.

## COUNSEL

Blecher & Collins, Maxwell M. Blecher, Donald R. Pepperman, Maryann R. Marzano, William C. Hsu and Majed Dakak for Plaintiffs and Appellants.

Tucker Ellis & West, Matthew I. Kaplan, Nathan T. Newman, Irene C. Keyse-Walker, Patrick J. Pascarella; and Gleam O. Davis for Defendants and Respondents.

## OPINION

**KRIEGLER, J.**—Plaintiffs and appellants Michael Willard and Jessica Sher subscribed to a wireline[1] telephone service and to a service offered by the telephone company that suppressed their names, addresses, and telephone numbers from the White Pages telephone directory and 411 directory assistance (nonpublished service). The voice communications services industry in California is under the jurisdiction of California's Public Utilities Commission (CPUC). (Pub. Util. Code, § 701.)[2] All rates for services must be "just and reasonable." (Pub. Util. Code, § 451.) In 2006, the CPUC determined that competitive market conditions supported pricing freedom for, among other things, nonpublished service, with the caveat that the matter would be reopened if there was evidence of market abuses. (*Order Instituting Rulemaking on the Commission's Own Motion to Assess and Revise the Regulation of Telecommunications Utilities* (2006) Cal.P.U.C. Dec. No. 06-08-030, p. 156 (Decision 06-08-030).) Thereafter, the telephone company raised its fee for nonpublished service. Believing the fee was too high, plaintiffs brought this putative class action for declaratory, restitutionary, and injunctive relief.

The trial court entered a judgment of dismissal of the complaint after sustaining a demurrer of defendants and respondents AT&T Communications of California, Inc., and Pacific Bell Telephone Company (collectively AT&T)[3]

---

[1] "Wireline" telephone service is commonly called "landline" service.

[2] The "[CPUC] may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." (Pub. Util. Code, § 701.)

[3] The complaint alleged that Pacific Bell does business as AT&T California.

to the complaint without leave to amend.[4] Plaintiffs contend the complaint sufficiently alleges causes of action for unconscionability and violations of Business and Professions Code section 17200 (section 17200) et seq.[5] We affirm.

## PROCEDURAL BACKGROUND

### I. *Allegations of Complaint (Filed May 3, 2010)*[6]

AT&T violated its wireline subscribers' right to privacy under California Constitution, article 1, section 1, by grossly overcharging its customers for nonpublished service and for not listing their names, addresses, and telephone numbers in the White Pages only (unlisted service). Subscribers have a constitutional right to exclude this information from the White Pages and directory assistance. Willard and Sher were subscribers to AT&T's nonpublished service. AT&T charged $1.25 per month for nonpublished service and $1 per month for unlisted service. These fees generated revenues of $40 million for services that cost AT&T almost nothing to provide. Competing wireline carriers in California also engaged in this practice and form an oligopoly in the wireline market.

#### A. *First Cause of Action*

In the first cause of action, for declaratory relief to deem the contract to be unconscionable, plaintiffs alleged the contractual fees for subscribing to nonpublished service and unlisted service were unconscionable because of the true cost of providing the services, unequal bargaining power, and the customer's right to privacy. AT&T had discretion to set the level of the fees.

#### B. *Third Cause of Action*[7]

In the third cause of action, for violation of section 17200, plaintiffs alleged that, since at least June 2007, AT&T charged its customers unconscionable and oppressive fees for nonpublished service and unlisted service. This practice violated the implied covenant of good faith and fair dealing, as it

---

[4] Choosing to rest on the allegations in the complaint, plaintiffs did not request leave to amend.

[5] Section 17200 et seq. are labeled the " 'unfair competition law.' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 168, fn. 2 [83 Cal.Rptr.2d 548, 973 P.2d 527].)

[6] We do not summarize the class action allegations, as they are not relevant to the issues in the appeal.

[7] Plaintiffs raise no appellate issue concerning dismissal of the second cause of action.

breached the customers' right to privacy, enforced unconscionable and oppressive contractual fee provisions, and was unfair; plaintiffs were entitled to an award of restitution damages and injunctive relief.

## II. *Pleadings on AT&T's Demurrer to Complaint*

In a demurrer to the complaint, AT&T contended, in relevant part, that the complaint failed to state facts sufficient to constitute a cause of action and the trial court should abstain, under the doctrine of judicial abstention, from adjudicating the complaint because the issues involve complex economic policy best suited to the Legislature or an administrative agency. AT&T contended there is no right to privacy in a telephone listing, and the Legislature has recognized telephone companies may charge for nonpublished service and unlisted service.

In opposition, plaintiffs contended they enjoy a right to privacy with respect to their telephone numbers and addresses, the causes of action state a claim for relief, and judicial abstention is not appropriate.

## III. *Judicial Notice*

The trial court took judicial notice of Decision 06-08-030 and *In re Alternative Regulatory Frameworks for Local Exchange Carriers* (1994) 56 Cal.P.U.C.2d 117, issued September 15, 1994.

In Decision 06-08-030, "[based on] our statutory and market analysis, [the CPUC] grant[ed] carriers broad pricing freedoms concerning almost all telecommunications services, new telecommunications products, bundles of services, promotion, and contracts." (Dec. 06-08-030 at p. 2.) The CPUC felt "compelled to discard price controls [for basic residential service] in the face of both state and federal policies favoring competition in the voice communications market." (*Id.* at p. 152.) In addition to incumbent local exchange carriers such as AT&T, the voice communications marketplace included wireless carriers, competitive local exchange carriers, cable television with voice over internet protocol (VoIP), and pure VoIP providers. (*Id.* at pp. 3–4.) "[M]arket conditions support pricing freedoms for basic residential rates . . . ." (*Id.* at p. 153.) "[A]s our discussion of statutes and market conditions makes clear, neither statutes nor market conditions make it necessary to continue price regulation for any of the services 'associated' with basic service. In particular, we see no reason to continue price regulation of . . . non-published and unlisted telephone numbers [and] [W]hite [P]ages listings . . . ." (*Id.* at p. 156.) "Finally, we will remain vigilant in monitoring the voice communications marketplace. We will ensure that basic residential service remains affordable and does not trend above the current highest basic

residential rate in the state, no matter the technology employed to offer such service. Should we see evidence of market power abuses, we retain the authority and firm resolve to reopen this proceeding to investigate such developments promptly." (*Id.* at pp. 156–157.)

In *In re Alternative Regulatory Frameworks for Local Exchange Carriers, supra*, 56 Cal.P.U.C.2d 117, the CPUC granted GTE California, Inc.'s request to increase its charge for nonpublished service from $0.60 per month to $1.50 per month and to establish an unlisted service for $1 per month.

## IV.  *Trial Court's Rulings*

The trial court sustained the demurrer to the complaint without leave to amend. As to both causes of action, the court concluded judicial abstention was appropriate because the case "delves into complex economic policy and regulation that is better left to the Legislature." "The CPUC has already decided to deregulate [fees for nonpublished service and unlisted service] and let the free market control the prices. The CPUC chose to stop regulating those services while they retained the 'authority and firm resolve to reopen' review of those services. [Citation.] Neither this court nor the appellate courts are required to determine the wisdom of economic policy. That function rests with the Legislature. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* [*, supra,*] 20 Cal.4th 163, 184 (*Cel-Tech Communications*). The court elects to avoid the fray and therefore abstains."

Moreover, plaintiffs had "no inherent right to privacy in a telephone listing." Citing *People v. Chapman* (1984) 36 Cal.3d 98 [201 Cal.Rptr. 628, 679 P.2d 62] (*Chapman*), the trial court stated: " 'context' determine[s] whether listing information constitute[s] a potentially protectable privacy interest." Further, plaintiffs had no reasonable expectation of privacy in their contact information. "When they bought AT&T's telephone service, plaintiffs knew their contact information would surface in the white pages directory unless they also purchased non-publication or non-listing services."[8]

The trial court dismissed the complaint with prejudice and entered judgment in favor of defendants.

---

[8] The trial court further found the first cause of action for unconscionability failed to state a cause of action, because the voice communications market was competitive, allegations a price exceeds cost do not state a cause of action, and plaintiffs knew what the charge would be. The court made no finding on the cause of action for violation of section 17200.

## DISCUSSION

### I. *Standard of Review*

The trial court having sustained the demurrer without leave to amend, "we give the complaint a reasonable interpretation and treat the demurrer as admitting all material facts properly pled. [Citation.] Because the trial court dismissed this case on the basis of the doctrine of judicial abstention, however, our standard of review is abuse of discretion." (*Alvarado v. Selma Convalescent Hospital* (2007) 153 Cal.App.4th 1292, 1297 [64 Cal.Rptr.3d 250] (*Alvarado*); see *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482 [104 Cal.Rptr.3d 545].)

### II. *Trial Court's Decision to Abstain Was Not an Abuse of Discretion*

#### A. *Abstention*

Plaintiffs contend the trial court abused its discretion by abstaining from adjudicating the dispute, because complex economic policy questions were not involved.

Because the remedies of declaratory judgment, injunction, and restitution "are equitable in nature, courts have the discretion to abstain from employing them." (*Desert Healthcare Dist. v. PacifiCare FHP, Inc.* (2001) 94 Cal.App.4th 781, 795 [114 Cal.Rptr.2d 623] (*Desert Healthcare*); see *Babb v. Superior Court* (1971) 3 Cal.3d 841, 850 [92 Cal.Rptr. 179, 479 P.2d 379].)

"It is well established that a court of equity will abstain from employing the remedies available under the unfair competition law in appropriate cases. . . . '. . . Where [an unfair competition law] action would drag a court of equity into an area of complex economic [or similar] policy, equitable abstention is appropriate. In such cases, it is primarily a legislative and not a judicial function to determine the best economic policy.' (*Desert Healthcare*[, *supra*, 94 Cal.App.4th at pp. 795–796]; accord, *People ex rel. Dept. of Transportation v. Naegele Outdoor Advertising Co.* (1985) 38 Cal.3d 509, 523 [213 Cal.Rptr. 247, 698 P.2d 150] [billboards]; *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 137–138 [62 Cal.Rptr.2d 620] [insurance industry]; *Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 564–565 [53 Cal.Rptr.2d 878] [earthquake insurance]; *California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 218–219 [27 Cal.Rptr.2d 396] [bank service fees]; *Samura v. Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1301–1302 [22 Cal.Rptr.2d 20] [health maintenance organization third party liability policies]; *Larez v. Oberti* (1972) 23 Cal.App.3d 217, 221–222 [100 Cal.Rptr. 57]

[domestic farmworker protection from illegal alien competition]; *Cobos v. Mello-dy Ranch* (1971) 20 Cal.App.3d 947, 951 [98 Cal.Rptr. 131] [same]; *Diaz v. Kay-Dix Ranch* (1970) 9 Cal.App.3d 588, 599 [88 Cal.Rptr. 443] [same]; see *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 596–597 & fn. 2 [71 Cal.Rptr.2d 731, 950 P.2d 1086] (dis. opn. of Brown, J.) [sale of cigarettes to minors].)" (*Shamsian v. Department of Conservation* (2006) 136 Cal.App.4th 621, 641–642 [39 Cal.Rptr.3d 62].)

Judicial review of service fees charged by one company "is an entirely inappropriate method of overseeing bank service fees. . . . [T]he court [is not] ' ". . . well suited to regulating retail . . . pricing via injunction on an ongoing basis." ' . . . [There is a] general preference for legislative or administrative regulation in the field of price control: '[T]he control of charges, if it be desirable, is better accomplished by statute or by regulation authorized by statute than by *ad hoc* decisions of the courts. Legislative committees and an administrative officer charged with regulating an industry have better sources of gathering information and assessing its value than do courts in isolated cases.' [Citation.] [¶] This case implicates a question of economic policy: whether service fees charged by banks are too high and should be regulated. 'It is primarily a legislative and not a judicial function to determine economic policy.' [Citation.]" (*California Grocers Assn. v. Bank of America, supra*, 22 Cal.App.4th at p. 218 (*California Grocers*); see also *Cel-Tech Communications, supra*, 20 Cal.4th at p. 184.)

We agree with the trial court that, as the dispute centers on "whether service fees . . . are too high and should be regulated" (*California Grocers, supra*, 22 Cal.App.4th at p. 218), the court would be required to "delve[] into complex economic policy and regulation." Among the issues in the case are relevant market, market power, level of competition, and whether market conditions required pricing regulation. The fact the CPUC examined these matters in 2006 and issued a 291-page decision, concluding among other things that price regulation of fees for nonpublished service and unlisted service was unwarranted, indicates the dispute in this case involves complex issues of economic policy and regulation. (See Dec. 06-08-030.) The trial court's determination that complex economic policy issues are involved is not so manifestly unreasonable as to constitute an abuse of discretion.

■ It was not an abuse of discretion to conclude that judicial review of AT&T's fees for nonpublished service and unlisted service is inappropriate and overseeing service fees is best left to the CPUC.[9] (See *California Grocers*, 22 Cal.App.4th at pp. 218–219.) The administrative agency charged with

---

[9] The analysis in the dissent fails to give due deference to the discretion conferred on the trial court to apply the doctrine of judicial abstention. (See *Alvarado, supra*, 153 Cal.App.4th at p. 1297.)

responsibility over the challenged fees has expressly taken an industry from regulation to deregulation, after concluding the complex market forces in play were sufficient to avoid abuse. (See Pub. Util. Code, § 2893, subd. (e).)[10] The CPUC expressly stated it would revisit the issue if market abuses occurred after deregulation, and the trial court could reasonably conclude that plaintiffs should seek relief before the CPUC rather than in a court ill suited to making pricing decisions. Without alleging the market is less competitive now than it was in 2006, plaintiffs are asking the judiciary to reregulate fees which the CPUC determined should be deregulated. In the context of the affirmative resolution of the issues presented to the CPUC, and the evidence of a complex market system which is constantly evolving, judicial abstention is not an abuse of discretion where the CPUC retains jurisdiction to revisit the issue should it become necessary.[11]

## B. *Right to Privacy*

Plaintiffs contend abstention was improper because the first and third causes of action implicate their right to privacy under the California Constitution. We disagree with the contention. The complaint fails to state a violation of plaintiffs' right to privacy.[12]

■ Under California Constitution, article I, section 1, "All people . . . have inalienable rights . . . [including] pursuing and obtaining . . . privacy." The right to privacy encompasses governmental and private conduct. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 20 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*).) No court has extended the constitutional right of privacy to an individual's public telephone listing where the individual was

---

[10] Public Utilities Code, section 2893, subdivision (e) provides in pertinent part: "Until the market for local telephone service is competitive, a telephone corporation shall not charge any subscriber for having an unlisted or unpublished telephone number."

[11] To the extent plaintiffs raised an issue at oral argument that the recent decision in *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342 [137 Cal.Rptr.3d 293] supports reversal of the court's exercise of discretion, we disagree with the contention. *Klein*, which held that abstention from a dispute over whether Chevron's practice of purchasing motor fuel at a temperature lower than the temperature at which it was resold at retail violated, among other laws, section 17200, is inapposite. The dispute in *Klein* was not over the level of service fees, as is the dispute in this case. Abstention in *Klein* was an abuse of discretion, because the court failed to consider whether complex economic issues would be involved if Chevron were merely required to make certain disclosures to consumers concerning its practice. (202 Cal.App.4th at p. 1368.) Moreover, in *Klein*, no governmental entity had addressed the practice or provided an alternative means of addressing it. (*Id.* at p. 1369.) In this case, the CPUC recently addressed the issue of regulating the service fees in a comprehensive study of the voice communications marketplace and determined regulation is not warranted.

[12] We do not address whether abstention would be an abuse of discretion if a violation of the right to privacy had been stated in the complaint.

given the option to opt out of the public listing.[13] (Cf. *Chapman, supra,* 36 Cal.3d at pp. 108–109 [recognizing the privacy right of those who "pay[] an extra service charge to the telephone company to keep [their] unlisted information confidential . . . . [¶] The fact that many customers do not seek to keep their identities or telephone numbers private does not in any way diminish the privacy rights of those who do."].)

■ "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy. [¶] Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court. [Citations.] Whether plaintiff has a reasonable expectation of privacy in the circumstances and whether defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact. If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." (*Hill, supra,* 7 Cal.4th at pp. 39–40.)

We need not decide whether the privacy of one's telephone listing is a legally protected privacy interest and whether requiring a subscriber of wireline service to pay a monthly fee to maintain the privacy of his listing constitutes a serious invasion of privacy. There is no dispute that plaintiffs did not expect privacy in the circumstances, as they knew their listing would be public unless they paid a fee to opt out of being listed. Therefore, as a matter of law, the complaint did not state a violation of plaintiffs' right to privacy.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondents.

Turner, P. J., concurred.

**MOSK, J.,** Dissenting.—I dissent.

As enunciated in the recent case of *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342 [137 Cal.Rptr.3d 293] (*Klein*), a case arising under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) and the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), judicial abstention is only justified if the issue to be decided is one of complex economic

---

[13] Plaintiffs acknowledged no case holds that one's telephone listing, consisting of one's name, address, and telephone number, is protected by the constitutional right of privacy.

policy, which the court is ill equippedto decide and a plaintiff has an adequate alternative mechanism to address its claims. In the *Klein* case, the court held that at the pleading stage, it was not clear that plaintiffs' claims would necessarily require the court to enter into complex areas of economic policy. (*Klein, supra,* 202 Cal.App.4th at pp. 1367–1368.) The case involved claims in connection with the sale of gasoline at a temperature above that at which it had been purchased.

In the instant case, at the demurrer stage, just as in *Klein, supra,* 202 Cal.App.4th 1342, it cannot be said that the court would have to address areas of complex economic policy. (See *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 496–502 [104 Cal.Rptr.3d 545].) In fact, the trial court here was able to and did rule on alternative grounds that the practice in issue did not violate privacy laws, was not unconscionable, and did not breach the implied covenant of good faith and fair dealing. Because allegations of unconscionability and infringement of privacy were the basis of the cause of action for violation of the unfair competition law, the trial court in effect, dealt with that cause of action as well as those concerning unconscionability, privacy, and the implied covenant of good faith and fair dealing. To abstain and then rule on the merits seems like a contradiction to me. Moreover, there was no discussion by the trial court about the second requirement for abstention—the unavailability of an alternative remedy. The parties agree that the Public Utilities Commission has not regulated the practice involved because the market for local telephone services is viewed as competitive. (See Pub. Util. Code, § 2893, subd. (e).)

The free market allowed by the Public Utilities Commission is still subject to all applicable laws as to contract enforceability, including those concerning whether contracts are unconscionable, violate privacy laws, and constitute unfair competition. It may well be if the contracts in issue cannot be enforced, the Public Utilities Commission will have to deal with "offsetting rates." (Pub. Util. Code, § 2893, subd. (e).) But the resolution of whether the contracts for charges are unenforceable because, for example, they are unconscionable or violate privacy laws, has nothing to do with the economic considerations to be determined by the Public Utilities Commission. Just because the Public Utilities Commission authorizes a charge does not make a contract in which the charge is included immune from a challenge under statutory, contract, and constitutional law. We are not concerned here with the amount of the charge, but the legality of the contract in which the charge in question is included. The resolution of these issues does not involve a resolution of complex economic theories. If abstention occurs here, plaintiff will have no other means to seek redress, other than legislative action. Here, as in *Klein, supra,* 202 Cal.App.4th at page 1371, "the Legislature has not provided any alternative means of addressing the issues raised in plaintiffs' claims, nor has it provided any certainty that it will address those issues in the future. Abstention would therefore leave plaintiffs without a remedy."

The primary jurisdiction doctrine, which defendant has not invoked, "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390 [6 Cal.Rptr.2d 487, 826 P.2d 730].) This case challenges the validity of contracts under contract and constitutional law—not issues within the special competence of the Public Utilities Commission.

With respect to the ruling by the trial court on the merits, the issues of unconscionability and privacy should not be resolved at the demurrer stage in this case. If, as stated by the trial court, the determination is based on economic facts, it would seem that there could be conflicts in the facts, and therefore, this matter should not be determined by demurrer. (See *Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144 [67 Cal.Rptr.3d 120] [when there is conflicting evidence on unconscionability determination, there is a question of fact]; *A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 489 [186 Cal.Rptr. 114] [unconscionability a mixed question of law and fact]; *Baron v. Mare* (1975) 47 Cal.App.3d 304, 312 [120 Cal.Rptr. 675] [questions of surrounding fact must be determined in deciding unconscionability].) Similarly, privacy issues involve mixed questions of fact and law (*Lackner v. Department of Health Services* (1994) 29 Cal.App.4th 1760, 1765 [35 Cal.Rptr.2d 482]) that are generally unsuitable for resolution by demurrer (*Madison v. City & County of S. F.* (1951) 106 Cal.App.2d 232, 247 [234 P.2d 995]).

I express no opinion on the merits of the claims. I believe the claims should not be left undecided under the doctrine of abstention and should survive the demurrer.

Appellants' petition for review by the Supreme Court was denied June 20, 2012, S201738. Baxter, J., and Werdegar, J., did not participate therein.