**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ASANTE, an Oregon nonprofit corporation; CLARK COUNTY, NEVADA; RENOWN REGIONAL MEDICAL CENTER, Nevada non profit corporation; SKY LAKES MEDICAL CENTER, INC., An Oregon Non Profit Corporation; SOUTHERN HILLS MEDICAL CENTER, LLC, A Nevada Limited Liability Company; SUNRISE HOSPITAL AND MEDICAL CENTER, LLC, A Delaware Limited Liability Company registered in Nevada; PHC-FORT MOHAVE, INC., An Arizona Corporation; HAVASU REGIONAL MEDICAL CENTER, LLC, A Delaware Limited Liability Company registered in Arizona, on behalf of HAVASU REGIONAL MEDICAL CENTER in Lake Havasu City, Arizona; VALLEY HEALTH SYSTEMS, LLC, A Delaware Limited Liability Company registered in Nevada; SPARKS FAMILY HOSPITAL, INC., A Nevada Corporation; SUMMERLIN HOSPITAL MEDICAL CENTER, LLC; YUMA REGIONAL MEDICAL CENTER, An Arizona non Profit Corporation; SUNRISE MOUNTAINVIEW HOSPITAL, INC., A | No. 16-16866<br><br>D.C. No.<br>3:14-cv-03226-EMC |

Nevada Corporation; RENOWN
SOUTH MEADOWS MEDICAL
CENTER, Nevada Non Profit
Corporation,
                              *Plaintiffs-Appellants*,


                              v.


CALIFORNIA DEPARTMENT OF
HEALTH CARE SERVICES; JENNIFER
KENT, Director of the California
Department of Healthcare Services,
                              *Defendants-Appellees.*

ASANTE, an Oregon nonprofit corporation; CLARK COUNTY, NEVADA; RENOWN REGIONAL MEDICAL CENTER, Nevada non profit corporation; SKY LAKES MEDICAL CENTER, INC., An Oregon Non Profit Corporation; SOUTHERN HILLS MEDICAL CENTER, LLC, A Nevada Limited Liability Company; SUNRISE HOSPITAL AND MEDICAL CENTER, LLC, A Delaware Limited Liability Company registered in Nevada; PHC-FORT MOHAVE, INC., An Arizona Corporation; HAVASU REGIONAL MEDICAL CENTER, LLC, A Delaware Limited Liability Company registered in Arizona, on behalf of HAVASU REGIONAL MEDICAL CENTER in Lake Havasu City, Arizona; VALLEY HEALTH SYSTEMS, LLC, A Delaware Limited Liability Company registered in Nevada; SPARKS FAMILY HOSPITAL, INC., A Nevada Corporation; SUMMERLIN HOSPITAL MEDICAL CENTER, LLC; YUMA REGIONAL MEDICAL CENTER, An Arizona non Profit Corporation; SUNRISE MOUNTAINVIEW HOSPITAL, INC., A Nevada Corporation; RENOWN SOUTH MEADOWS MEDICAL CENTER, Nevada Non Profit Corporation,

No. 16-17080

D.C. No.
3:14-cv-03226-EMC

*Plaintiffs-Appellees*,

v.

CALIFORNIA DEPARTMENT OF
HEALTH CARE SERVICES; JENNIFER
KENT, Director of the California
Department of Healthcare Services,
                    *Defendants-Appellants.*

ASANTE, an Oregon nonprofit corporation; CLARK COUNTY, NEVADA; RENOWN REGIONAL MEDICAL CENTER, Nevada non profit corporation; SKY LAKES MEDICAL CENTER, INC., An Oregon Non Profit Corporation; SOUTHERN HILLS MEDICAL CENTER, LLC, A Nevada Limited Liability Company; SUNRISE HOSPITAL AND MEDICAL CENTER, LLC, A Delaware Limited Liability Company registered in Nevada; PHC-FORT MOHAVE, INC., An Arizona Corporation; HAVASU REGIONAL MEDICAL CENTER, LLC, A Delaware Limited Liability Company registered in Arizona, on behalf of HAVASU REGIONAL MEDICAL CENTER in Lake Havasu City, Arizona; VALLEY HEALTH SYSTEMS, LLC, A Delaware Limited Liability Company registered in Nevada; SPARKS FAMILY HOSPITAL, INC., A Nevada Corporation; SUMMERLIN HOSPITAL MEDICAL CENTER, LLC; YUMA REGIONAL MEDICAL CENTER, An Arizona non Profit Corporation; SUNRISE MOUNTAINVIEW HOSPITAL, INC., A Nevada Corporation; RENOWN SOUTH MEADOWS MEDICAL CENTER, Nevada Non Profit Corporation,

No. 17-15550

D.C. No. 3:14-cv-03226-EMC

OPINION

*Plaintiffs-Appellees*,

v.

CALIFORNIA DEPARTMENT OF
HEALTH CARE SERVICES; JENNIFER
KENT, Director of the California
Department of Healthcare Services,
*Defendants-Appellants*.

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted March 14, 2018
San Francisco, California

Filed April 2, 2018

Before: Ferdinand F. Fernandez, M. Margaret McKeown,
and Julio M. Fuentes,[*] Circuit Judges.

Opinion by Judge Fernandez

---

[*] The Honorable Julio M. Fuentes, United States Circuit Judge for the
U.S. Court of Appeals for the Third Circuit, sitting by designation.

## SUMMARY[**]

### Medicaid

Reversing the district court's summary judgment in an action brought by hospitals located outside the State of California but near the California border with their respective states, the panel held that the California Department of Health Care Services did not violate the dormant Commerce Clause in adopting Medi-Cal policies related to reimbursement to out-of-state hospitals.

The panel held that the Department was acting as a market participant, rather than a regulator, when it set rates of reimbursement to hospitals for those who were essentially insured as beneficiaries under Medi-Cal in a manner much like that of a private insurer participating in the market. The Department therefore was exempt from dormant Commerce Clause requirements.

### COUNSEL

Thomas J. Weiss (argued), Los Angeles, California; Michael S. Sorgen, Berkeley, California; Dean L. Johnson, Camano Island, Washington; for Plaintiffs-Appellants/Cross-Appellees.

Joshua Sondheimer (argued), Deputy Attorney General; Susan M. Carson, Supervising Deputy Attorney General;

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Julie Weng-Gutierrez, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, San Francisco, California; for Defendants-Appellees/Cross-Appellants.

**OPINION**

FERNANDEZ, Circuit Judge:

Nineteen hospitals[1] located outside of the State of California but near the California border with their respective states brought this action against the California Department of Health Services and against its director, Jennifer Kent, in her official capacity (collectively "the Department"). The Department supervises[2] administration of the Medi-Cal[3] program. California participates in federal Medicaid[4] through the Medi-Cal program.[5] The Hospitals asserted that when the Department adopted certain Medi-Cal policies related to Medi-Cal reimbursement to out-of-state hospitals it violated the Commerce Clause of the United States Constitution.[6] The

---

[1] Those hospitals are encompassed by the entities listed in the caption of this case. Hereafter, we refer to them collectively as "Hospitals" or "the Hospitals."

[2] Cal. Welf. & Inst. Code § 10740.

[3] Cal. Welf. & Inst. Code § 14000.4.

[4] *See* 42 U.S.C. §§ 1396–1396w-5.

[5] *See* Cal. Welf. & Inst. Code §§ 14000–14199.56.

[6] *See* U.S. Const. art. I, § 8, cl. 3.

district court held that the Department had violated the dormant (or negative) Commerce Clause, but denied the Hospitals' claim for retroactive monetary relief. In No. 16-16866, the Hospitals appealed the denial of retroactive relief, and in No. 16-17080 the Department cross-appealed the determination that its policies violated the dormant Commerce Clause. Also, in No. 17-15550, the Department appealed the grant of attorney's fees to the Hospitals. *See* 42 U.S.C. § 1988(b). If the Department was acting as a market participant in this regard, it was exempt from dormant Commerce Clause restrictions. It was so acting. Thus, we reverse.

BACKGROUND

The Hospitals filed a complaint in the Superior Court of the State of California on June 12, 2014, alleging that portions of the Department's reimbursement methodologies violated the dormant Commerce Clause.[7] The Department removed the action to the United States District Court for the Northern District of California. Thereafter, the parties filed cross-motions for summary judgment, and the district court granted a partial summary judgment to the Hospitals. Specifically, the district court held that certain of the Department's reimbursement policies regarding out-of-state hospitals violated the dormant Commerce Clause.

After the district court issued its summary judgment ruling, the parties met and conferred and the court issued another order entitled "Order Re Outstanding Provisions" which clarified and resolved several of the issues the court

---

[7] We note the Hospitals made a number of other claims, which, as will appear, are not ultimately relevant to the decision of these appeals.

had raised in its summary judgment order and enumerated steps that the Department was required to take in order to ensure that its reimbursement methodologies complied with the dormant Commerce Clause.  The district court later denied the Hospitals' request for retroactive monetary relief under California Civil Procedure Code section 1085 for certain reimbursements incurred between July 1, 2013, (the date on which the Department implemented its current methodology) and December 21, 2015 (the date on which the district court issued its summary judgment order).

The Hospitals then filed a premature appeal to this court that was dismissed.  Following that, the Department filed a motion for reconsideration of the summary judgment order on the grounds that the Hospitals had waived the federal claims and were relying solely on California Civil Procedure Code section 1085, which did not provide a basis for relief.  In response, the Hospitals sought leave to file an amended complaint to add a civil rights claim as a basis for their constitutional and statutory claims.  *See* 42 U.S.C. § 1983. The district court granted the Hospitals' motion to file an amended complaint.  The court also granted the Department's motion for reconsideration and clarified that the Hospitals were not entitled to any relief under section 1085.  The Hospitals moved for an award of attorney's fees.  *See* 42 U.S.C. § 1988(b).  The district court granted the Hospitals' motion and awarded them fees.  These appeals ensued.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review de novo a district court's grant of summary judgment." *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998). "We also review constitutional claims *de novo*." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 992 (9th Cir. 2007). In addition, we review questions of federal and state law de novo. *Churchill v. F/V Fjord (In re McLinn)*, 739 F.2d 1395, 1398, 1403 (9th Cir. 1984) (en banc). If there is no state supreme court decision on a state law issue, we look "to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir. 1991). State appeals court decisions on state law issues "provide guidance and instruction and are not to be disregarded in the absence of convincing indications that the state supreme court would hold otherwise." *Id.*

## DISCUSSION

While the parties have raised a number of other issues,[8] if the Department was a market participant, none of the other issues has any relevance to the disposition of these appeals because each one is premised on a determination that the Department was acting as a regulator rather than as a market participant. As we will explain, the premise is itself invalid.

---

[8] Those are: did Congress in effect grant the Department immunity from Commerce Clause attacks with respect to the distribution of disparate share hospital payments; did the Department improperly use the Medicare index in setting forth the wage index for the Hospitals; would the ordering of retroactive payments be proper; and was an award of attorney's fees proper.

The Commerce Clause provides that Congress shall have the power "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. "Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 98, 114 S. Ct. 1345, 1349, 128 L. Ed. 2d 13 (1994). This concept—known as the dormant Commerce Clause—"is driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38, 128 S. Ct. 1801, 1808, 170 L. Ed. 2d 685 (2008) (internal quotation marks omitted). The point is to "prevent a State from retreating into . . . economic isolation." *Id.* at 338, 128 S. Ct. at 1808 (internal quotation marks omitted). Thus, "[i]f a statute discriminates against out-of-state entities on its face, in its purpose, or in its practical effect, it is unconstitutional unless it serves a legitimate local purpose, and this purpose could not be served as well by available nondiscriminatory means." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (internal quotation marks omitted). It is most likely benign if it "does not isolate [the State] and protect its producers from competition." *Id.* at 1090. "Absent discrimination, we will uphold the law unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." *Id.* at 1087–88 (alteration and internal quotation marks omitted).

However, states are not merely regulators, they are also economic actors that participate in the marketplace. When a

state is acting as a market participant, rather than a market regulator, its decisions are exempted from the dormant Commerce Clause.  *Davis*, 553 U.S. at 339, 128 S. Ct. at 1809.    This distinction recognizes that "[t]here is no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market." *Reeves, Inc. v. Stake*, 447 U.S. 429, 437, 100 S. Ct. 2271, 2277, 65 L. Ed. 2d 244 (1980); *see also Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 810, 96 S. Ct. 2488, 2498, 49 L. Ed. 2d 220 (1976).  When doing so, they can also choose "to favor [their] own citizens." *Id.* at 810, 96 S. Ct. at 2498.  This is supported by concepts of state sovereignty, the right of private businesses to exercise their own independent discretion, and the fact that state proprietary decisions are laced with other complex and politically charged considerations. *See Reeves*, 447 U.S. at 438–39, 100 S. Ct. at 2278–79.

An activity is exempt under the market participant exception if it is a "proprietary rather than regulatory activity" that may be "analogized to the activity of" a private entity.  *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 277–78, 108 S. Ct. 1803, 1810, 100 L. Ed. 2d 302 (1988). Thus, under the dormant Commerce Clause, the Supreme Court has held that Maryland's program favoring in-state car-hulk processors,[9] South Dakota's sale of (and decision not to sell) cement,[10] and Kentucky's favorable taxation of local

---

[9] *Hughes*, 426 U.S. at 796, 96 S. Ct. at 2491.

[10] *Reeves*, 447 U.S. at 440, 100 S. Ct. at 2279.

municipal bonds (but not out-of-state bonds)[11] were exempt from dormant Commerce Clause restrictions.

In drawing the line between regulators and market participants, we have pointed out that "a court must examine whether the state or local government has imposed restrictions that 'reach beyond the immediate parties with which the government transacts business.'" *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 952 F.2d 1173, 1178 (9th Cir. 1992). If the state does that, it indicates that the state is seeking to regulate, not just participate in the market. *See White v. Mass. Council of Constr. Emps., Inc.*, 460 U.S. 204, 211 n.7, 103 S. Ct. 1042, 1046 n.7, 75 L. Ed. 2d 1 (1983); *see also S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 95, 104 S. Ct. 2237, 2244, 81 L. Ed. 2d 71 (1984) (plurality opinion); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 847, 25 L. Ed. 2d 174 (1970).

Here the Department sets rates of reimbursement to hospitals for those who are essentially insured as beneficiaries under Medi-Cal in a manner much like that of a private insurer participating in the market. *See, e.g.*, *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 872 (9th Cir. 2017). Like others in the market, no one is required to deal with the Department. The beneficiaries (insureds) who receive protection through the program voluntarily choose to participate. *See* Cal. Code Regs. tit. 22, § 50143. The state does not force it upon them by regulation or otherwise. *Id.* More importantly, the Hospitals are not required to participate in the Medi-Cal insurance program; no hospital is. They may or may not, as

---

[11] *Davis*, 553 U.S. at 331–32, 128 S. Ct. at 1804.

they see fit.  *See* Cal. Welf. & Inst. Code § 14043.1(o); *Cal. Ass'n of Med. Prods. Suppliers v. Maxwell-Jolly*, 199 Cal. App. 4th 286, 309, 131 Cal. Rptr. 3d 692, 712 (2011); *see also Sierra Med. Servs. All. v. Kent*, __ F.3d __, No. 14-56483, 2018 WL 1161864, at *5 (9th Cir. Mar. 6, 2018).  In fact, if a Medi-Cal beneficiary wishes to use the services of a hospital, it is incumbent upon that beneficiary to ascertain whether the hospital has chosen to participate in the program. *See Lackner v. Dep't of Health Servs.*, 29 Cal. App. 4th 1760, 1765, 35 Cal. Rptr. 2d 482, 485 (1994).  Of course, that is the very sort of issue that is faced regularly by insureds in the private insurance market.  Finally, lest there be doubt, we note that, like any other market participant, the Department is subject to market pressures and conditions.  It must, indeed, set its payment rates at a level that is "sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." 42 U.S.C. § 1396a(a)(30)(A).

This program is very similar to the program endorsed by us when we decided that the State of Alaska was acting as a market participant when it instituted a milk-purchase plan. There, as here, the state received federal funds to purchase benefits for its citizens.  *Big Country Foods*, 952 F.2d at 1175.  There it was milk for school children.  *Id.*  Here, it is medical services for the beneficiaries.  There, as here, the state just dealt with the providers and did not engage in downstream regulation.  *See id.* at 1178–79.  It did not try to tell third parties what they could or could not do.  That was so even though the state level government itself did impose rules on individual school districts—the actual buyers—because we deemed the districts to be the state for this purpose.  *Id.* at 1179.  Moreover, the fact that federal funds (and regulations)

were involved made no real difference because that alone did not deprive the state "of the market participant exception to the dormant commerce clause." *Id.* at 1180.

It is worth noting, also, that the Medi-Cal program does not resemble a situation where a state has absolute monopoly over a resource and uses that monopoly to interfere with interstate commerce. *See W. Oil & Gas Ass'n v. Cory*, 726 F.2d 1340, 1342–43 (9th Cir. 1984). In *Cory*, the state was using the fact that it held title to the land underlying the ocean in order to impose what amounted to a tax on foreign and interstate commerce by those who chose to move product from sea to land and vice versa. *Id.* at 1341. We held that the state's misuse of its monopoly could not be countenanced because it imposed an undue burden upon interstate commerce. *Id*. at 1343. The Medi-Cal program gives the Department no such arbitrary power. No one is required to use or sell to the program, any more than anyone is required to participate in a private insurance plan. The Department is not autarchic; the market is.

Finally, we have not overlooked the Hospitals' argument that due to federal law[12] and their own state laws[13] they are required to render emergency services to everyone, including those who are indigent. That may include Medi-Cal beneficiaries. We fail to see how that removes the Department from the market participant category. The burdens imposed by the statutes are not imposed by the Department; they apply to everyone regardless of their wealth

---

[12] 42 U.S.C. § 1395dd(b).

[13] *See* Ariz. Rev. Stat. § 20-2803(C); Nev. Rev. Stat. § 439B.410(1); Or. Rev. Stat. § 441.094(2).

or insurance status, if any.  That is, if a hospital desires payment by others, it must follow the policies of the entity paying them—whether that is the Department, or an insurance company, or another payor, or someone else.  That alone does not serve to disqualify the Department from being a market participant along with all of the other participants.

Thus, Alaska's purchase of milk for its citizens is not at all unlike the Department's purchases of medical services for its beneficiaries.[14]  The result, therefore, is the same—the exception remains applicable.  The Department's reimbursement methodology does not violate the dormant Commerce Clause.

## CONCLUSION

The district court's resolution of the market participant issue was the foundation of its decision's whole edifice and with the demolition of that foundation, the whole edifice falls and shatters.  Thus, we need not and do not opine on the questions presented by the other issues placed before us in No. 16-16866 and No. 16-17080.  Of course, with that determination, the attorney's fees award falls also; thus, we will not discuss the questions involved in No. 17-15550.

**REVERSED.**

---

[14] To the extent that a California court disagreed with the above explication, it incorrectly decided the federal questions in the dormant Commerce Clause case before it and, of course, its conclusions do not bind us.  *See Children's Hosp. & Med. Ctr. v. Bontá*, 97 Cal. App. 4th 740, 768, 118 Cal. Rptr. 2d 629, 650 (2002).